**UNITED STATES of America, Appellee,**

v.

**Debra NOLAND, Appellant.**

**No. 91–1031.**

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 15, 1991.

Decided April 6, 1992.

Rehearing Denied May 19, 1992.

Michael Angel, Little Rock, Ark., argued, for appellant.

Michael D. Johnson, Little Rock, Ark., argued (Charles A. Banks and Michael D. Johnson on the brief), for appellee.

Before McMILLIAN and JOHN R. GIBSON, Circuit Judges and HUNTER,* Senior District Judge.

ELMO B. HUNTER, Senior District Judge.

This is an appeal from a judgment of conviction following a jury trial.[1] Jurisdiction in the district court was invoked under 18 U.S.C. §§ 371, 844(h) and 1341. Jurisdiction in this court is invoked under 28 U.S.C. § 1291.

Debra Noland (hereinafter "appellant") was indicted on April 19, 1990, in an eight count indictment charging her with conspiracy to commit arson and mail fraud; arson; and six counts of mail fraud. Trial began on September 25, 1990. The appellant was convicted on all eight counts and sentenced on December 17, 1990,[2] to 93 months imprisonment under the sentencing guidelines. Included in her offense level calculation was a two level increase for obstruction of justice. Appellant's brother, Marvin Tucker, was found guilty on all counts,

---

* The Honorable Elmo B. Hunter, Senior United States District Judge for the Western District of Missouri, sitting by designation.

1. The Honorable George Howard, Jr., presiding in the United States District Court, Eastern District of Arkansas, Western Division.

2. An amendment to final judgment was entered on December 19, 1990.

while her husband, Diarl Noland, had his motion for acquittal granted after the government rested its case.

## STATEMENT OF FACTS

On November 6, 1989, appellant reported to the Pulaski County Sheriff's Office and her insurance company, Farmers' Insurance Group, that her residence had been burglarized. After a short investigation Farmers' paid the appellant for her claim. Included in this amount was money for a specifically scheduled ring. The appellant submitted a 1981 appraisal to establish the existence and value of the ring. At the time of the alleged burglary, the appellant was behind in all of her bills and had little money in her checking account. When the insurance company paid the claim on December 7, 1989, appellant was further behind and overdrawn in her checking account. In the following three weeks, she paid nearly all her outstanding bills, including her utility bills, credit cards, and house payment. The sole source for these expenditures was the insurance money collected on the burglary claim.

During the same period of time, appellant solicited her brother, Marvin Tucker, to intentionally set fire to her residence. His first attempt to do so occurred on Sunday, December 17, 1989, while the appellant, her husband, and her two children visited a relative in Harrison, Arkansas. Appellant and her family had never before nor since visited this relative. The appellant then approached James Tucker, on December 19, 1989, and went to James Tucker's residence with her two children. She left the children at his house and took him in her car offering him $1000 to burn her house. This visit was the only occasion appellant and her children had ever, or have ever, visited James Tucker and his family in their home.

James and Marvin Tucker talked the next two days and agreed together to burn the appellant's residence. They arranged for the burning to occur on December 21, 1989, when the appellant and her family planned to be shopping. This attempt also failed. Appellant returned to James Tuck-

er's residence the next day, Friday, December 22, 1989. No one was home and she left a note for James to phone her. The note was found by Jennifer Tucker when she returned home from school. James Tucker did not respond to the note.

Over the next week, appellant arranged through Marvin Tucker for Marvin and James to try the arson again and increased the amount they were to be paid to $1500 each. Marvin and James agreed to try again and decided to recruit a third person to drive the truck so both of them could enter the residence, where they planned to spread 20 gallons of gasoline. On December 31, 1989, James Tucker spread gasoline at the house and set fire to the residence while appellant and her family were away from home. On January 1, 1990, appellant paid the $1500 and began the insurance claim that comprises the object of the conspiracy and mail fraud counts of the indictment. Her claim was for more than $205,-000 approximately $111,000 of which was for the alleged contents of the house.

The government also elicited testimony involving the series of insurance claims that appellant had filed over the years. The government presented evidence pertaining to a 1982 insurance claim of a ring lost by appellant at a Wal-Mart; a 1983 burglary in which appellant made an insurance claim during the pendency of personal bankruptcy and a November 1989 burglary that resulted in an insurance claim. Several witnesses testified to appellant's financial health, citing this as relevant to show a motive to commit arson. In essence, the government's case centered on the testimony of James Tucker, an accomplice, and a myriad of Federal Rule of Evidence 404(b) evidence, which was admitted over the objection of appellant's trial counsel.

### I.

Appellant asserts that the trial court erred in admitting any evidence pertaining to the ring being lost and claimed on the 1982 insurance form and being stolen and claimed on the 1989 insurance form. In her insurance claim for the November 1989 burglary, appellant included a ring valued

at $3395. Because of the value of the ring, it had to be separately scheduled on the insurance policy and proof of its value had to be provided to the insurance company. This was accomplished by providing the insurance company with the 1981 appraisal for the ring, which was the same appraisal submitted to substantiate ownership for the 1982 reported loss.

■ On this appeal, appellant presents two grounds for reversal. The first ground concerns the 1989 insurance claim for the ring made by appellant after the 1989 burglary. Evidence was presented that the 1989 burglary was a sham to defraud the insurance company, in order that the appellant might pay her existing bills. The government contends that the evidence was part of the conspiratorial scheme charged. Appellant argues that the evidence surrounding the burglary was sufficient to convey to the jury the government's contention that the insurance claim was fraudulent, and evidence of the actual insurance claim for the ring was cumulative and highly prejudicial.

Appellant argues that the specific evidence, i.e., evidence of the ring, is so prejudicial that it should not have been permitted. Fed.R.Evid. 403 states that evidence, although relevant, may be excluded if its probative value is substantially outweighed by the danger of *unfair* prejudice. Merely because evidence is prejudicial, does not mean that the evidence must be excluded. In fact, no verdict could be obtained without prejudicial evidence. "Rule 403 requires the district court to weigh the probative value of evidence against the effect of its non-probative aspect—and to assess the danger that admission of the evidence will *unfairly* prejudice the appellant. When the effect on the jury of the 'non-probative aspect of the evidence is likely to be substantially greater than the effect of the probative aspect, the evidence should be excluded.'" *United States v. Bailleaux*, 685 F.2d 1105, 1111 (9th Cir.1982) (emphasis in original). *Bailleaux* concludes that with the greater degree of probativeness possessed by the evidence, the greater the showing of unfair prejudice that will be required to exclude the evidence. *Id.* Here the evidence is prejudicial and is probative as to appellant's intent and motivation to defraud the insurer. Appellant concedes that the evidence was admissible against her under the intent, plan and preparation portion of Rule 404(b). However, the evidence is not unfairly prejudicial. "While Rule 403 protects against evidence that is unfairly prejudicial in that it tends to suggest decision on an improper basis, the rule does not protect against evidence that is prejudicial merely in the sense that it is detrimental to a party's case." *United States v. Michaels*, 726 F.2d 1307, 1315 (8th Cir.1984), *cert. denied*, 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984). The District Court was not in error in exercising its discretion in finding that the probative value of the evidence was not substantially outweighed by the danger of its unfair prejudicial effects. *See U.S. v. Zimmerman*, 832 F.2d 454, 458 (8th Cir.1987).

■ Appellant's second ground is that evidence regarding the 1982 insurance claim for the ring should have been excluded. At trial, the government contended that the evidence concerning the 1982 claim was offered to cast doubt upon the legitimacy of the 1989 claim, with the premise being that the 1982 claim was legitimate and the ring was lost. Appellant argues that a reasonable juror would infer that if evidence established that the 1989 claim was fraudulent, then the 1982 claim was also fraudulent. As evidence in support of this assertion, appellant cites the government's cross-examination of appellant, where appellant was questioned about the number of insurance claims filed by her over the years including the 1982 insurance claim. Appellant infers that the jury would question the legitimacy of the 1982 claim and would therefore consider this as evidence of appellant's bad character under Fed.R.Evid. 404(b). Appellant concludes that the probative value of this evidence was outweighed by the unfair prejudice of admission.

In essence, appellant asserts that the evidence of the 1982 claim for the lost ring implicates the appellant in a prior bad act.

Fed.R.Evid. 404(b) is inapposite. The proper standard of review is abuse of discretion. *See United States v. Bernal,* 719 F.2d 1475, 1478 (9th Cir.1983). Appellant conjures the scenario that the jury speculated the 1982 claim was fraudulent inasmuch as a reasonable juror would infer that because the government showed that the 1989 claim· was fraudulent the 1982 claim was also fraudulent. In fact, the government elicited no evidence from witnesses nor attempted to suggest in any manner to the jury that the 1982 claim was false or fraudulent. The evidence was that the ring was accidently misplaced. The evidence was premised on the fact that the 1982 claim was true, therefore, Debra Noland did not have the ring in 1989. Thus, the 1989 claim was fraudulent, inasmuch as the same ring was lost in 1982.[3] The evidence of the 1982 insurance claim, for the ring valued in the 1981 appraisal being lost, was not unfairly prejudicial. Therefore, this evidence is subject to an inquiry of relevance under Rule 402. The district court has broad discretion regarding issues of relevance and its decision will not be overturned unless it constitutes an abuse of discretion. *See Bernal,* 719 F.2d at 1478. Here, the probative value of the evidence outweighs any danger of unfair prejudice.

◼ Appellant asserts that the trial court committed error in admitting evidence that she submitted an inflated insurance claim for the fire loss of her home. Appellant contends that although she falsely and fraudulently represented the nature, quality, and quantity of her property in the claims she filed, this should not have been admitted into evidence. Appellant attacks the financial analysis[4] evidence presented by the government, whether related to the fraudulent nature of the proof of loss, or to appellant's motive. She argues that the evidence was unduly prejudicial. Counsel states most evidence was countered, yet

the cumulative effect cast appellant in a bad light. No cases are cited and the sole legal reference is to Fed.R.Evid. 403. Proof of the appellant's intent to defraud is an element of mail fraud, *United States v. Sedovic,* 679 F.2d 1233, 1237–38 (8th Cir. 1982). Hence, proof of one's involvement in an actual misrepresentation is relevant and admissible, *United States v. Lanier,* 838 F.2d 281, 284 (8th Cir.1988); and evidence of an appellant's motive is generally admissible where relevant, *United States v. Pedroza,* 750 F.2d 187, 200–201 (2d Cir. 1984) *cert. denied,* 479 U.S. 842, 107 S.Ct. 151, 93 L.Ed.2d 92 (1986).

A district court's determination of the admissibility of that type of evidence is entitled to great deference and its determination will not be reversed on appeal absent a clear and prejudicial abuse of discretion. *Michaels,* 726 F.2d at 1315. There is no such abuse of discretion and appellant was not unfairly prejudiced.

### II.

◼ Appellant also asserts that she was denied a fair trial because the government made reference to her role in a 1983 burglary loss claim in its opening statement and later excluded that evidence. The proffered evidence was that, in 1980, the appellant and her husband purchased the residence at 15901 Foxmoor[5] for approximately $58,000. In 1982, appellant and her husband were significantly in arrears on their mortgage payments, as well as other debts, and filed bankruptcy. That bankruptcy was converted to a liquidation bankruptcy and appellant's debts were discharged. The mortgage holder of the residence objected to the bankruptcy plan and sought to foreclose on the residence, thereby excluding the debt on the residence from the bankruptcy proceeding. While these actions were pending, the appellant and her husband reported a burglary of their residence and claimed a loss of ap-

---

**3.** It is of interest to note that the 1982 claim was based upon the 1981 appraisal which was also used for the 1989 burglary loss claim.

**4.** The government's theory of the case was that plaintiff's poor financial health gave her the

motive to falsify insurance claims to provide finances.

**5.** This residence is the subject of the arson and mail fraud charges.

proximately $31,000 of personal property. None of this property had been listed as assets in the bankruptcy.

In the course of settling the insurance claim, the insurance company learned of the bankruptcy proceeding and, likewise, the bankruptcy trustee and the mortgage holder on the residence learned of the insurance claim. Consequently, the bankruptcy trustee filed suit claiming the proceeds of the insurance claim as part of the bankruptcy proceeding. The insurance company's settlement payment of $17,000 was made to the bankruptcy court. Approximately $10,000 of excess funds remained from the insurance claim and were distributed to the Nolands. These funds were used to bring the Noland's mortgage current. At the hearing on the motion in limine, the government asserted that this evidence was relevant and admissible for two reasons. First, the evidence was admissible to show that the appellant had a motive to commit the crimes of which she was charged. Her motive was financial stress, and her purpose was to obtain money from the insurance company in excess of her lost assets. Second, the government's position was that the evidence relating to the alleged burglary loss, the knowledge of the loss and reporting of it by Diarl Noland, the handling of the insurance claim by Debra Noland, the excessive nature of the claim, and the eventual settlement for significantly more than Diarl Noland had initially reported stolen, clearly indicated prior bad acts by the appellant and her husband, pursuant to Fed.R.Evid. 404(b). The government argued that the evidence was relevant to the issue of modus operandi of the two defendants, their knowledge of the mailing element of the mail fraud counts, and the knowledge of Diarl Noland with regard to the fraudulent nature of the insurance claim.

Government counsel discussed in his opening statement the relation of this evidence to the financial analysis and then discussed the evidence with regard to Diarl Noland's knowledge and the defendants' modus operandi. Government counsel noted that appellant's husband had reported the alleged burglary, waited two and one half hours after returning home to do so, claimed that there were no large items taken, and initially valued the items at $2500. Counsel then pointed out that Debra Noland had taken the role of dealing with the insurance company, and that Diarl Noland clearly knew of the fraudulent nature of the claim because he had received $17,000 for what he initially valued at $2500. Government counsel stated that this was indicative of his participation in the crimes charged. At trial, the district court changed its ruling, excluded the evidence inasmuch as it involved allegations of a burglary, insurance fraud, and/or bankruptcy fraud, and permitted the government to only put into evidence that which related solely to the financial analysis, that the appellant received the $17,000 from the burglary claim and how the appellant disbursed the money.

Appellant's sole contention is that the comments by government counsel in opening statement were prejudicial and, therefore, her conviction resulted from the denial of due process of law. Appellant is, indeed, entitled to a fair trial, but not a perfect one. *Lutwak v. United States*, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953). The statements made were insignificant considering the overwhelming evidence of the appellant's guilt. *See Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) and *United States v. Boyce*, 797 F.2d 691, 694–95 (8th Cir.1986).[6] The relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. *See Darden*, 477 U.S. at 181. The trial was not so infected. If any error was committed, that error was harmless, *see* Fed. R.Crim.P. 52(a). When a harmless error is

---

6. Appellant also argues that the court failed to instruct the jury to disregard the government's opening statement concerning this evidence. Counsel for defense requested no such instruc- tion and the court instructed the jury in both the preliminary instructions and final instructions that statements made by the attorneys are not evidence.

committed, the appellant is not entitled to have her conviction set aside.

### III.

■ Appellant asserts that the application of Section 3C1.1 of the Sentencing Guidelines was made in error. That section provides for a two level increase in an appellant's offense level calculation if justice was obstructed with regard to the offense of conviction.

The district court found that appellant solicited false testimony from her two minor children. The proper scope of review under the Sentencing Guidelines is that the district court's factual findings are to be accepted as true unless clearly erroneous with due regard being given to the opportunity of the district court to judge the credibility of the witnesses, *see* 18 U.S.C. § 3742(d). The sentences should be affirmed if those facts were correctly applied to the Guidelines. *Id.* at § 3742(e)(3) and *United States v. Brett*, 872 F.2d 1365, 1371 (8th Cir.1989), *cert. denied*, 493 U.S. 932, 110 S.Ct. 322, 107 L.Ed.2d 312 (1989).

Here, the judge's determination to increase the offense level was based upon the credibility of Debra Noland and her children. The testimony of the two children related to the visit between the appellant and James Tucker on December 19, 1989. James Tucker testified that he was solicited to participate in the arson by the appellant during this visit, and that his family was decorating the Christmas tree when the appellant arrived with her two children. He further stated that that was the only time the appellant had ever visited him at his house and that his family did not associate with the appellant. He further testified that the appellant asked him to go for a ride with her, which he did, and that they were gone approximately 30 minutes. Appellant showed him $1000 during this trip. Upon their return, the appellant took her children and left. James Tucker further testified that during the following two days, he and his cousin, Marvin Tucker, discussed the arson of the appellant's house and agreed to attempt it on Thursday. According to James, Marvin made

arrangements with the appellant for appellant and her family to be away from home on a shopping trip. James further stated that he and Marvin went to the residence, where Marvin entered alone, but the residence failed to explode as planned. According to James, on the following day the appellant left a note for him at his residence which said, in essence, that it was urgent for James to call her and provided the appellant's phone number. James stated he did not call the appellant but learned from Marvin that appellant was willing to up the price to $1500 a piece if they would try again.

Shawndale Tucker, James Tucker's 14 year old daughter, testified that she first met Debra Noland and Debra's children when they showed up at her house on the Tuesday before Christmas. She stated that she did not know that she was related to them until that night and had never visited them. She further testified that Debra Noland told her father, James, that she needed to talk with him and then Debra and James left for about thirty minutes. Shawndale also testified that her younger sister, Jennifer, found a note on Friday and testified as to the contents of the note written by Debra Noland and the giving of the note to her father.

Each of Debra Noland's children claimed that they discovered the Tuckers were their relatives in early November and went to visit them shortly thereafter. Each acknowledged the visit on the Tuesday before Christmas, claiming that it was the second time they had visited the Tucker house and that it was motivated by the desire to visit relatives. They further testified that they were there "about an hour and 15 minutes or so." Debra's children claim that D.J., the appellant's son, left the Tucker residence with Debra and James to go buy icicles for the Tucker Christmas tree and that the trip lasted only 15 minutes. Further, Camelia Noland, daughter of Debra Noland, testified that her mother did not have a lot of money with her that night, and that she knew this because she "frequently goes through her purse," because she is "a nosey child." Appellant contends

that the testimony of her children was not particularly perjurious, however, even if it was, there was no evidence that she suborned such perjury.

 The trial judge's finding of obstruction will not be disturbed. He had the opportunity to observe the character and demeanor of the witnesses and appellant. The record supports his findings. The solicitation of false testimony generally may be viewed as an obstruction of justice. *See United States v. Lange,* 918 F.2d 707, 709 (8th Cir.1990).[7]

Accordingly, appellant's conviction was in accordance with the applicable law, fair, and the sentence is appropriate. This court hereby affirms the verdict entered in the district court.

Opinion, 948 F.2d 1107, superseded.

---

**7.** Additionally, the record is replete with inconsistent and unsupported statements on which the trial judge could have found that Debra Noland obstructed justice. *See United States v. Dyer,* 910 F.2d 530, 533 (8th Cir.1990) (an appellant's own testimony may be the basis for the obstruction enhancement); *United States v. Ogbeifun,* 949 F.2d 1013 (8th Cir.1991) (a defendant is subject to a two-point sentencing enhancement for obstruction of justice based upon an express finding that he committed perjury in his trial testimony); and *United States v. Patterson,* 890 F.2d 69, 71 (8th Cir.1989) (appellant's pretrial assertions made during the investigative phase may be the basis for an obstruction of justice).