**UNITED STATES of America, Appellee,**

v.

**Marie Kay BRELSFORD, Appellant.**

No. 92–2330.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 12, 1992.

Decided Dec. 10, 1992.

Christopher Harlan, Kansas City, MO, argued (Christopher C. Harlan and Raymond C. Conrad, on the brief), for appellant.

Lajuana M. Counts, Kansas City, MO, argued (Lajuana M. Counts and Jean Paul Bradshaw II, on the brief), for appellee.

Before FAGG, BEAM, and HANSEN, Circuit Judges.

BEAM, Circuit Judge.

Marie Kay Brelsford entered a plea of guilty to one count of bank larceny in violation of 18 U.S.C. § 2113(b). The district court,[1] applying the United States Sentencing Guidelines ("guidelines"), sentenced her to a period of confinement. The court also ordered her to pay restitution at the direction of the United States Probation Office. Brelsford appeals her sentence, arguing that the district court erred by increasing her offense level pursuant to U.S.S.G. § 3B1.3 (Nov.1991) for abuse of a position of private trust.[2] We affirm.

1. The Honorable D. Brook Bartlett, United States District Judge for the Western District of Missouri.

2. Section 3B1.3 reads in pertinent part:
 If the defendant abused a position of public or private trust, or used a special skill, in a

## I. BACKGROUND

On February 21, 1991, the Boatmen's First National Bank of Kansas City ("Bank") discovered through an informal audit that the key to one of its cash drawers—drawer 703—was missing. After gaining entry to drawer 703, the bank manager ascertained that $11,821 was missing. Drawer 703 was a reserve drawer not assigned to a permanent employee. It had last been used by a temporary teller in March of 1990. Upon further investigation, the Bank also discovered that $300 had been taken from the vault between March 1 and March 6, 1991. The Bank then began an internal inquiry which included interviewing employees about the missing funds. Brelsford was interviewed in this process. Initially, she denied any involvement in the money disappearances. After failing a polygraph examination administered as part of the Bank's investigation, however, Brelsford confessed that she took the money both from drawer 703 and from the vault.

Brelsford began employment as a permanent teller at the Bank on December 18, 1989. She was promoted to teller supervisor on December 16, 1990, and was employed in that capacity until her employment was terminated on March 22, 1991. According to the Presentence Report ("PSR"), as a teller supervisor Brelsford was responsible for monthly audits of each teller's cash drawer, including reserve drawer 703, and for preparing periodic audit reports. In addition, the PSR states that Brelsford had access to duplicate keys to each teller drawer, and had sole custody of the key to drawer 703.[3] The PSR recommended a two-level adjustment in the base offense level for abuse of a position of trust, based on findings that Brelsford used a position of private trust to facilitate and later to conceal her offense. Brelsford objected to these findings and to the recom-

manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels.

3. The lead teller had access to these keys in Brelsford's absence.

mendation for an upward adjustment of the offense level.

After a two-day evidentiary hearing, the district court substantially adopted the findings in the PSR, drawing three specific conclusions of its own. First, the court concluded that Brelsford's responsibility for the only key to drawer 703 made it easier for her to take the money from drawer 703. Second, the court found that Brelsford was responsible for conducting regular audits of all teller drawers and for reporting any significant shortages to her superiors. As teller supervisor, Brelsford had primary responsibility for the unassigned teller drawer 703. The court concluded that she used her position of trust to conceal the shortages from drawer 703 by omitting drawer 703 from her audit reports. Finally, the court found that Brelsford was responsible for assigning teller drawers to new and to temporary tellers. During the time she was teller supervisor, all of the teller drawers, except drawer 703, were assigned to a teller at one time or another. The court concluded that Brelsford used her position of trust to avoid assigning drawer 703, knowing that if drawer 703 were assigned to a teller, that teller would perform an audit on the drawer and would discover that funds were missing. Accordingly, the court increased her offense level two points for abuse of a position of private trust.

## II. DISCUSSION

■ We review findings of fact at the sentencing hearing for clear error and give due deference to the district court's application of the guidelines to the facts. *See* 18 U.S.C. § 3742(e); *United States v. Culver*, 929 F.2d 389, 392 (8th Cir.1991). The district court was authorized to increase the base offense level under section 3B1.3 of the guidelines if Brelsford (1) occupied a position of private trust and (2) used her position in a manner which significantly facilitated the commission or concealment of her offense.[4] Brelsford contests both points.

### A. Position of Trust

■ The guidelines do not define "position of trust," but the commentary to section 3B1.3 is instructive:

> The position of trust must have contributed in some substantial way to facilitating the crime and not merely have provided an opportunity that could as easily have been afforded to other persons. This adjustment, for example, would not apply to an embezzlement by an ordinary bank teller.

U.S.S.G. § 3B1.3, comment. (n. 1). Although any position of employment constitutes a position of trust in some sense, the guideline definition requires something more than a mere employment relationship to warrant an upward adjustment. In *United States v. Lange*, 918 F.2d 707 (8th Cir.1990), a panel of this court held that Lange, a postal employee who had direct access to express and certified mail one day a week as a substitute handler, held a position of trust. The majority reasoned that Lange's position was unlike other postal employment because other postal employees did not have the same opportunity to steal from this type of "especially sensitive" mail and to conceal the crime. *Id.* at 710.

The *Lange* dissent noted, however, that Lange's job as a mail handler merely provided him with the same opportunity that is afforded to all handlers of express and certified mail. Thus, the dissent suggested that Lange's position was analogous to that of an ordinary bank teller who has the same opportunity to embezzle as any other bank teller. Brelsford asks us to overrule the majority opinion in *Lange* and to adopt the dissent's discussion of positions of trust. Brelsford argues that her job as teller supervisor is no more a position of trust than that of an ordinary bank teller. She asserts that all tellers at the Bank had equal access to drawer 703 because she routinely left her keys lying in different

---

**4.** Brelsford does not argue that abuse of trust is included in the base offense level or specific offense characteristic of her offense. *See Unit-ed States v. Georgiadis*, 933 F.2d 1219, 1225 (3d Cir.1991) (abuse of a position of trust is not an element of embezzlement).

locations around the Bank. Furthermore, Brelsford asserts that the audit reports for which she was responsible were not relied on by Bank officials and were not qualitatively different from the reports generated by ordinary tellers. Brelsford argues, under the standard of the *Lange* dissent, that since ordinary tellers performed functions similar to her functions and had similar opportunities to abscond with money, her position was not unique and thus not a position of trust.

 Even if we had the authority to overrule *Lange*,[5] we are not so inclined. Although we agree with the *Lange* dissent that Lange was not the only person employed by the Postal Service to handle express and certified mail, uniqueness of the job is not relevant for determining whether an employee holds a position of trust.[6] An employer, especially one as large as the United States Postal Service, may place many employees in positions of trust. *See United States v. Ajiboye*, 961 F.2d 892, 895 (9th Cir.1992) (postal carrier who delivers ordinary mail is in a position of trust). The relevant inquiry under the guidelines is whether trust is inherent to the nature of the position. *United States v. Claymore*, 978 F.2d 421, 423 (8th Cir.1992). Banks do not generally vest a great amount of unfettered responsibility in their ordinary tellers. Bank tellers are subject to constant supervision and must account for all of their transactions at the end of each day. The guideline application note to section 3B1.3 uses the ordinary bank teller as an example of a position that does not involve a sufficient degree of trust to justify an adjustment of the offense level, even if the defendant used this position to facilitate or conceal the offense.

Brelsford, however, was not an ordinary teller; she was a teller supervisor. Brels-ford was employed by the Bank to monitor its other tellers. The Bank trusted her to review the daily reports, to conduct regular audits, to assign the teller drawers, and to safeguard the keys to idle teller drawers. We agree with the district court that the fact that she exercised her responsibilities carelessly, allowing other tellers access to drawer 703, does not alter the conclusion that as a teller supervisor she was in a position of trust. Brelsford's contention that her superiors did not rely on her audit reports only strengthens the district court's findings. The Bank relied on her to see that audits were conducted regularly and to maintain the reports in her custody. It was Brelsford's job to sound the alarm if there were any significant shortages. The fact that no one looked over her shoulder is itself evidence that she held a position of trust. Accordingly, we find no error in the district court's conclusion that Brelsford held a position of private trust.

B. Facilitating Commission or Concealment of the Offense

 Brelsford argues that even if she was in a position of trust, she did not use her position "in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. She contends that since the keys to drawer 703 were left lying around the Bank, she would have had the same opportunity to steal from that drawer regardless of the position she held at the Bank. If a more responsible employee held the teller supervisor position, however, the keys would not have been available to anyone who cared to take them. Brelsford's carelessness does not negate the fact that as the teller supervisor she was responsible for the key to drawer 703. The district court's finding that she used this responsibility to facilitate her of-

---

5. A panel of this court has no power to overrule the opinion of another panel; only the court sitting en banc may do this. *Campbell v. Purkett*, 957 F.2d 535, 536 (8th Cir.1992) (per curiam).

6. Brelsford also asks us to follow the opinion of the district court in *United States v. Arrington*, 765 F.Supp. 945 (N.D.Ill.1991), which held that low-level, unskilled employees do not hold posi-tions of trust. Although an employee's level of skill may be relevant to determining whether she holds a position of trust, it is not dispositive. In any event, the guidelines address the employee's level of skill independently from the position of trust. *See United States v. Culver*, 929 F.2d 389, 393 (8th Cir.1991) (two-level enhancement is appropriate where pilot used his special skills to facilitate the offense).

fense in a substantial way is not clearly erroneous.

 Brelsford also contests the district court's findings that she used her position to conceal her offense. As teller supervisor, Brelsford had primary responsibility for drawer 703. We find ample support in the record for the district court's findings that Brelsford used her position to falsify her reports by omitting the shortages in drawer 703 and to ensure that drawer 703 was not assigned to a teller who might discover that funds were missing. The district court's conclusion that Brelsford used her position of trust to conceal her offense is not clearly erroneous.

Accordingly, we hold that the district court did not err in enhancing Brelsford's offense level by two levels for abuse of a position of private trust.

## III. CONCLUSION

For the reasons discussed above, the sentence imposed by the district court is affirmed.