UNITED STATES of America, Appellee,

v.

Jimmie A. ARMSTRONG, Appellant.

No. 92–2346.

United States Court of Appeals,
Eighth Circuit.

Submitted March 17, 1993.

Decided April 27, 1993.

William C. McArthur, Little Rock, AR, for appellant.

Jana Christian, Asst. U.S. Atty., Little Rock, AR, for appellee.

Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

McMILLIAN, Circuit Judge.

Jimmie A. Armstrong appeals from a final judgment entered in the District Court [1] for the Eastern District of Arkansas sentencing him to forty-eight months imprisonment following his guilty plea to conspiring to counterfeit United States currency in violation of 18 U.S.C. § 371. For reversal, he argues the district court erred in enhancing his sentence under U.S.S.G. § 3B1.3 for abuse of a position of trust and under U.S.S.G. § 3C1.1 for obstruction of justice. He also argues the district court erred in denying him a reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. For the reasons discussed below, we affirm the judgment of the district court.

According to the presentence report (PSR), Armstrong was employed as a drill instructor with the Arkansas Department of Correction Boot Camp, and he supervised the activities of inmates Michael Northweather, Patrick Liljebeck, and Earnest Reagan. He learned during a discussion session among the inmates that a former employee of Reagan's had once made a counterfeit bill while working in Reagan's print shop. Armstrong then approached the three inmates and discussed with them the possibility of manufacturing counterfeit bills. After Armstrong left the employment of the Boot Camp and the inmates were released, he remained in contact with them. He eventually elicited their help in manufacturing

1. The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

and passing counterfeit bills. The four men were charged with conspiring to counterfeit obligations of the United States. When the four men appeared at the court house for arraignment, Armstrong offered money to the other three in exchange for their statements that Armstrong had no knowledge of the counterfeiting operation.

The PSR indicated that, because Armstrong used his position as a drill instructor at the Boot Camp to contact his coconspirators and gain access to information regarding counterfeiting, his offense level should be enhanced for abuse of a position of trust. The PSR also indicated that, because Armstrong asked others to concoct stories about his noninvolvement in the conspiracy and offered his coconspirators money to "take the rap," his offense level should be enhanced for obstruction of justice. The PSR further indicated that Armstrong should be denied a reduction for acceptance of responsibility: even though Armstrong pleaded guilty, he denied that he asked others to concoct stories or that he offered money to his coconspirators to do so, and he was not truthful regarding the extent of his involvement in the conspiracy. Armstrong objected to these sentencing adjustments.

After hearing testimony from all four coconspirators and others, the district court overruled the objections. The district court denied Armstrong the acceptance-of-responsibility reduction on the grounds that Armstrong did not testify truthfully concerning his degree of participation in the conspiracy and that, during the search of his home, Armstrong failed to voluntarily disclose the location of all the currency. The district court enhanced Armstrong's sentence for obstruction of justice after concluding that it believed the testimony of Armstrong's coconspirators concerning money Armstrong offered them to exonerate him. The district court further concluded that the enhancement was warranted because Armstrong recruited a former inmate to make a false threat after Armstrong learned that he was a possible suspect in the counterfeiting operation. The district court also enhanced Armstrong's sentence for abuse of a position of trust, finding that he used his position as a drill instructor at the Boot Camp to make

contact with his coconspirators and facilitate the commission of the offense. The district court relied on *United States v. Brown,* 941 F.2d 1300 (5th Cir.) (per curiam) (upholding enhancement for abuse of position of trust where defendant used his position as a correctional officer to obtain heroin with the help of inmates), *cert. denied,* —— U.S. ——, 112 S.Ct. 648, 116 L.Ed.2d 665 (1991). With a total offense level of 22 and a criminal history category of I, the Guidelines range was 41–51 months. The district court sentenced Armstrong to forty-eight months imprisonment and three years supervised release, imposed a $5,000 fine, and ordered restitution in the amount of $1,380. This appeal followed.

A district court may enhance a defendant's sentence under Guidelines § 3B1.3 if the defendant (1) occupied a position of public or private trust and (2) used that position in a manner which significantly facilitated the commission or concealment of the offense. *United States v. Brelsford,* 982 F.2d 269, 271 (8th Cir.1992). Armstrong's position as a drill instructor at the Boot Camp constituted a position of public trust. *Cf. United States v. Claymore,* 978 F.2d 421, 423 (8th Cir.1992) (tribal police officer held position of public trust); *United States v. Brown,* 941 F.2d at 1305 (public places great deal of trust in correctional officers). Armstrong seems to argue that he did not use his position to facilitate the counterfeiting scheme because no plans were made until after he left his employment at the Boot Camp. Liljebeck testified, however, that, while they were at the Boot Camp, Armstrong asked him to solicit Reagan's help in counterfeiting currency. Reagan and Northweather testified that Armstrong had indicated in his office at the Boot Camp that he would like to have some of the counterfeit currency if Reagan ever obtained some. Armstrong himself testified that he learned that Reagan had experience in counterfeiting when Reagan brought it up at a meeting at the Boot Camp and that he asked Reagan questions about the process while he was still employed at the Boot Camp. The record reflects that Armstrong used his supervisory position to interact with the inmates and to solicit their

help in obtaining counterfeit currency. At the very least, Armstrong gained access to information which he used later on when he left his employment and the inmates were released. The district court's finding that Armstrong used his position of public trust to facilitate the counterfeiting scheme was not clearly erroneous. *See United States v. Brelsford,* 982 F.2d at 272–73.

■ In reviewing the enhancement for obstruction of justice, we accept as true the district court's factual findings unless the findings are clearly erroneous. We also give due regard to the district court's opportunity to judge the credibility of the witnesses. *See United States v. Noland,* 960 F.2d 1384, 1390 (8th Cir.1992). The solicitation of false testimony may constitute an appropriate basis for an obstruction-of-justice enhancement. *Id.* at 1391. Here, Armstrong testified that he did not intend to offer his coconspirators a bribe when he stated that he would give money to "get out of this mess." Liljebeck testified, however, that Armstrong not only made the statement to him, but also told him that Reagan was going to accept the offer and he should let him know what he was going to do. Reagan testified that Armstrong offered him money to take the responsibility for the scheme so that all four men would not have to go to prison. The district court did not clearly err in discrediting Armstrong's testimony and enhancing Armstrong's sentence based on his coconspirators' testimony. Furthermore, the district court did not clearly err in finding that the obstruction-of-justice enhancement was warranted based on Armstrong's solicitation of a false threat.

■ In light of the district court's finding that Armstrong had obstructed justice by offering money to his coconspirators in exchange for statements that Armstrong was not involved in the counterfeiting scheme, we conclude the district court properly denied the reduction for acceptance of responsibility. *See United States v. Todd,* 963 F.2d 207, 211 (8th Cir.1992). Furthermore, the record supports the district court's findings that Armstrong was not completely truthful in regard to his involvement in the conspiracy and in regard to the location of the currency

in his home. *See United States v. Stockton,* 968 F.2d 715, 721 (8th Cir.1992) (affirming denial of acceptance-of-responsibility reduction where defendant admitted to only partial involvement in conspiracy).

Accordingly we affirm the judgment of the district court.