**UNITED STATES of America, Appellee,**

v.

**Harvey DURANSEAU, also known as Alan B. Merrill, also known as Glen M. Mitchell, Appellant.**

**No. 93–3513.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 15, 1994.

Decided June 7, 1994.

Alfred Willett, Cedar Rapids, IA, for appellant.

Rodger E. Overholser, Cedar Rapids, IA, for appellee.

Before McMILLIAN, WOLLMAN, and MAGILL, Circuit Judges.

MAGILL, Circuit Judge.

Harvey Duranseau appeals both his jury conviction for aiding and abetting the interstate transportation of stolen goods in violation of 18 U.S.C. §§ 2314 and 2 (1988) and the district court's [1] sentence of ninety-eight months' imprisonment. Duranseau argues that (1) the district court improperly dismissed, pursuant to 18 U.S.C. § 3161(c)(1) (1988) (Speedy Trial Act), the original indictment against him *without* prejudice, (2) the government presented insufficient evidence for the jury to find him guilty of aiding and abetting the interstate transportation of stolen property, (3) the district court improperly applied a two-level enhancement for obstruction of justice, and (4) the district court improperly applied the Sentencing Guidelines when it departed upward and sentenced Duranseau to a concurrent sentence of ninety-eight months. We affirm.

## I. BACKGROUND

In February 1991, Duranseau originally was indicted in the Eastern District of Michigan on three counts for violation of 18 U.S.C. § 2314. Pursuant to a government pretrial motion based on the unavailability of a key witness, the Michigan district court dismissed, without prejudice, one count relating to Duranseau's transportation of stolen property from Iowa to Michigan. The government re-indicted Duranseau on December 18, 1991, in the Northern District of Iowa, on the one count that the Michigan court had dismissed. The indictment alleged that Duranseau transported jewelry stolen from John Running's jewelry store from Iowa to Michigan (the Iowa offense). After Duranseau was arraigned on January 10, 1992, he filed numerous pretrial motions to the district court that delayed his trial date.

On December 7, 1992, the morning of trial, Duranseau moved to dismiss the indictment for violation of his speedy trial rights. *See* 18 U.S.C. § 3161(c)(1). The Iowa district court determined that it was required to include the forty days that had expired prior

---

1. The Honorable Michael J. Melloy, Chief Judge, United States District Court for the Northern District of Iowa.

to trial in the Michigan case. As a result, the government had exceeded the seventy-day cap by twenty-six days. The district court dismissed the indictment without prejudice and noted that the delay was the result of "unintentional noncompliance with the Act." The government re-indicted Duranseau on the same charge in January 1993. Duranseau was arraigned on February 3, 1993. Again, Duranseau filed numerous pre-trial motions that delayed the eventual trial date. The jury trial commenced on May 10, 1993.

At trial, the government presented testimony that early in September 1988, a man who identified himself as Alan Merrill came to Running's store and sold Running a ring. Merrill showed Running his Michigan driver's license. Michigan records indicated that Duranseau had obtained a Michigan driver's license in the name of Alan Merrill. Later in September, Duranseau returned and received a tour of Running's store. On September 24, Duranseau visited Running's store once again. On September 26, someone burglarized Running's store. Running suffered a loss of between $40,000 and $60,000 that forced him to shut down his forty-three-year-old jewelry business.

Bill and Carolyn McCollum testified that in December 1988, Duranseau informed them that he had a briefcase full of jewelry that he wanted to sell. Duranseau told Carolyn McCollum that he had received the jewelry from an uncle who had died. Duranseau sold several pieces of jewelry to McCollum. Running identified these items as jewelry stolen from his store. In October 1992, Detective Sergeant Robert Manes of the Michigan State Police executed a search warrant on Duranseau's safe-deposit box. Detective Manes discovered over 500 pieces of jewelry. Many of the individual pieces had Running's identification tags on them. Running identified over fifty percent of the jewelry as pieces stolen from his store.

Duranseau presented four witnesses at trial. Mary Lou Cole, Duranseau's sister, testified at trial that Duranseau was with her in Michigan on September 25, 1988 and all day on September 26, 1988. She was sure of the September 25, 1988 date because she claimed that it was the day after she had broken off her engagement with her fiancé. On cross-examination, Cole admitted that she had testified as an alibi witness for Duranseau before and that she did not know her former fiancé's age, birthdate, or his address.

Danny Schmitzer testified that Duranseau had been with him in Florida after lunch on September 23, 1988, had driven away at noon of September 24, 1988, and returned to Florida on September 27, 1988. Schmitzer testified on cross-examination that he had received a letter from Duranseau asking him to find records that would jog his memory about Duranseau's whereabouts in late September 1988. Prior to trial, Schmitzer told FBI agents that he had not seen Duranseau since 1981.

Richard Neely, Duranseau's nephew, who previously had testified as an alibi witness for Duranseau's wife, testified that in September 1988 he saw Ed Suiter with a lot of jewelry. Further, Neely testified that Suiter had invited him to drive with Suiter to put jewelry in Duranseau's safe-deposit box. Finally, Mark LaCusta testified that he saw Duranseau's brother and Suiter with a suitcase full of jewelry, and that they offered to sell LaCusta some of that jewelry.

The jury convicted Duranseau of aiding and abetting the interstate transportation of stolen property. At sentencing, the government offered evidence that Duranseau was a career criminal who had obtained multiple aliases to further his criminal designs and that Cole had perjured herself by lying about an alleged fiancé to strengthen her alibi testimony. The district court acknowledged that there was no direct evidence that Duranseau had suborned Cole's perjury; nevertheless, the district court found that circumstantial evidence supported the conclusion that Duranseau had suborned perjury. The district court determined that Duranseau was involved in a conspiracy to suborn perjury in which Duranseau would testify as an alibi witness for his friends and relatives and that they would testify as alibi witnesses for him. Thus, the district court applied a two-level enhancement for obstruction of justice under § 3C1.1 of the guidelines.

The district court also departed upward to give Duranseau a sentence of ninety-eight months to run concurrently with two other federal sentences imposed by Michigan district courts. The district court departed upward because it determined that if it gave Duranseau a sentence within the applicable guideline range, then Duranseau would receive no extra prison time for the Iowa offense. Duranseau timely appealed.

## II. DISCUSSION

Duranseau raises four points on appeal. Duranseau claims: first, the district court abused its discretion when it dismissed his initial indictment without prejudice; second, the government presented insufficient evidence for a jury to convict him for aiding and abetting the interstate transportation of stolen property; third, the district court clearly erred when it determined by a preponderance of the evidence that he had suborned perjury; and fourth, the district court erred when it departed upward to give Duranseau a ninety-eight-month concurrent sentence.

### A. Section 3161(c)(1) Dismissal

■ Duranseau argues that the district court abused its discretion when it dismissed his indictment pursuant to 18 U.S.C. § 3161(c)(1) *without* prejudice. Duranseau argues that the delay was the fault of the government and that the delay prejudiced his defense because a defense witness who would have provided alibi testimony died after the government delay.

■ "The Speedy Trial Act requires that a federal criminal defendant be brought to trial within 70 days of the filing of the indictment or of arraignment, whichever is later." *United States v. Koory*, 20 F.3d 844, 846 (8th Cir.1994). When a violation occurs, dismissal is mandatory on the motion of the defendant. *Id.; see also* 18 U.S.C. § 3162(a)(2). The district court has discretion to dismiss the indictment with or without prejudice. *Koory*, 20 F.3d at 846. We review a district court's decision to allow reprosecution for an abuse of discretion. *Id.* at 847.

An abuse of discretion occurs when a relevant factor that should have been given significant weight is not considered, when an irrelevant or improper factor is considered and given significant weight, or when all proper and no improper factors are considered, but the court in weighing those factors commits a clear error of judgment. *United States v. Kramer*, 827 F.2d 1174, 1179 (8th Cir.1987). Absent clear error, we will not disturb factual findings by the district court. *Koory*, 20 F.3d at 847. The factors that a district court must consider when determining whether to bar reprosecution are "(1) the seriousness of the offense; (2) the facts and circumstances which led to the dismissal[;] and (3) the impact of reprosecution on administration of the Act and justice in general." *Kramer*, 827 F.2d at 1176 (citing 18 U.S.C. § 3162). We examine these three factors in turn.

Duranseau does not argue that the interstate transportation of stolen property, a felony offense with a maximum penalty of 120 months' imprisonment and/or a fine of $250,-000, is not a serious offense. We agree with the government that this offense is serious.

Next, we consider the facts and circumstances leading to the dismissal. "[C]ircumstances do not favor dismissal with prejudice, however, where there is no showing that the claimed negligence was in reality an attempt to obtain a tactical advantage for the government or that the government regularly or frequently failed to meet the time limits of the Act." *Koory*, 20 F.3d at 848 (citing *Kramer*, 827 F.2d at 1177). The district court found that the twenty-six-day delay was the result of "unintentional non-compliance with the Act." Specifically, Duranseau first was indicted in Michigan, but the government moved to dismiss the Iowa offense before trial. The government erroneously excluded the forty non-excludable days expended pursuant to the Michigan indictment when it calculated the total number of non-excludable speedy trial days under the first Iowa indictment. *See United States v. Leone*, 823 F.2d 246, 248 (8th Cir.1987). As a result of this error in calculation, the government exceeded the seventy-day cap by twenty-six days.

A twenty-six-day delay is not so substantial as to mandate a dismissal with prejudice regardless of other circumstances. *See id.* (holding that fifty-nine-day delay not so substantial as to require dismissal *with* prejudice regardless of other circumstances). Further, we credit the district court's determination that the delay resulted from inadvertent non-compliance with the Act, and not from a desire to gain a tactical advantage against Duranseau.

Finally, we must determine the effect of reprosecution of Duranseau on the administration of the Act and justice in general. The district court found that there was "minimal prejudice to the defendant." Duranseau claims that the delay resulted in prejudice to his case because Suiter, a defense witness who died before the trial, would have provided alibi testimony for Duranseau. Duranseau argues that the reprosecution, in light of Suiter's death, prejudiced his defense. We disagree.

First, at trial, at least two of Duranseau's witnesses provided alibi testimony for Duranseau. Cole testified that she was with Duranseau on September 26, 1988, the day of the robbery. Schmitzer testified that he was with Duranseau immediately before and after September 26, 1988. Second, Duranseau's defense at trial was that Suiter, not Duranseau, stole the jewelry and put it into Duranseau's safe-deposit box. Suiter's testimony at trial, assuming that he would have waived his Fifth Amendment rights, would have duplicated other alibi testimony already in evidence and would have linked Duranseau to Suiter. In light of the testimony by Duranseau's witnesses that linked Suiter to the robbery, any link between Duranseau and Suiter could have been interpreted by the jury to support a determination that Duranseau aided Suiter in the interstate transportation of property. The district court's factual determination that Duranseau's reprosecution resulted in minimal prejudice was not clear error. *See Kramer,* 827 F.2d at 1179.

We conclude that the district court gave proper consideration to each of the factors in 18 U.S.C. § 3162 and its factual findings were not clearly erroneous. Therefore, we hold that the district court did not abuse its discretion in dismissing the first indictment without prejudice.

**B. Insufficiency of Evidence**

Duranseau argues that there was insufficient evidence for the jury to find that he aided and abetted the interstate transportation of stolen money. "To convict [a defendant] of aiding and abetting, the government [must] prove [the defendant] associated [himself] with the illegal activity, ... took part in the activity as something [he] wished to bring about, and by taking part [he] sought to make the activity succeed." *United States v. Copple,* 827 F.2d 1182, 1187 (8th Cir.1987), *cert. denied,* 484 U.S. 1073, 108 S.Ct. 1046, 98 L.Ed.2d 1009 (1988). The government may prove the essential elements through circumstantial evidence. *Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 137–38, 99 L.Ed. 150 (1954). We review the evidence in the light most favorable to the government, and may reverse the jury verdict only if the evidence was so insufficient that a reasonable jury must have entertained a reasonable doubt of guilt. *United States v. Noibi,* 780 F.2d 1419, 1421 (8th Cir.1986).

The evidence, when viewed in the light most favorable to the government, is sufficient to sustain the jury's verdict. Running testified that Duranseau visited his store three times before the robbery. The McCollums testified that Duranseau sold them jewelry that Running later identified as jewelry stolen from his store. The Michigan State Police found numerous pieces of jewelry in Duranseau's Michigan safe-deposit box that had Running's identification tags on them. Running identified over half of the jewelry found in Duranseau's safe-deposit box as jewelry stolen from his store. We conclude that there was sufficient evidence for a jury to conclude that Duranseau aided and abetted the interstate transportation of stolen property.

**C. Suborning Perjury: Section 3C1.1**

Duranseau argues that the district court improperly enhanced his offense level by two levels for obstruction of justice pursuant to U.S.S.G. § 3C1.1 (Nov. 1992). The basis for the district court's enhancement was that it found that Duranseau had suborned the perjury of Cole, one of his alibi

witnesses. The district court determined that Cole perjured herself in order to bolster her alibi testimony.[2] Duranseau argues that the government failed to produce evidence of a nexus between Cole's perjured testimony and Duranseau's procurement of that testimony. Duranseau relies heavily on a statement by a government witness that he had no evidence that Duranseau had suborned perjury.[3]

When reviewing an enhancement for obstruction of justice, this court accepts as true the district court's factual findings unless they are clearly erroneous. *United States v. Armstrong,* 992 F.2d 171, 174 (8th Cir.1993). The district court must determine by a preponderance of the evidence, *see United States v. Malbrough,* 922 F.2d 458, 464 (8th Cir.1990), *cert. denied,* 501 U.S. 1258, 111 S.Ct. 2907, 115 L.Ed.2d 1071 (1991), that Cole perjured herself and that Duranseau "aided or abetted, counseled, commanded, induced, procured, or willfully caused" that perjury, *see* U.S.S.G. § 3C1.1, comment. (n. 1) (Nov. 1992).

The parties do not dispute that Cole perjured herself.[4] Further, the government can sustain its burden that Duranseau procured Cole's perjury through circumstantial, as well as direct, evidence. The district court found that Duranseau and his relatives provided alibi testimony for one another. There was evidence that these prior alibi testimonies were false. Further, there was evidence that Duranseau sent a letter to Schmitzer asking him to find documents that would jog Schmitzer's memory as to Duranseau's whereabouts in late September 1988. This evidence supports the district court's finding that there was a nexus between the witnesses' testimonies and Duranseau's procurement of that testimony.

The district court did not clearly err when it determined by a preponderance of the evidence that Cole committed perjury and that Duranseau procured that perjured testimony. *See United States v. Seabolt,* 958 F.2d 231, 234 (8th Cir.1992) (per curiam), *cert. denied,* —— U.S. ——, 113 S.Ct. 1411, 122 L.Ed.2d 782 (1993).

### D. Upward Departure: Section 5G1.3

Finally, Duranseau argues that the district court improperly applied the guide-

---

2. The district court stated the following:

> I do believe that ... [Duranseau] can and should be assessed for obstruction on the grounds that he was involved in procuring perjured testimony.
>
> I think when one makes a decision in cases like this, you can't leave your common sense at the door, and while there is no direct link between the defendant or no one has testimony to say that they [sic] saw [Duranseau] tell [Cole] to lie, the fact of the matter is that [Cole] did lie. She lied on matters which she used in order to bolster her credibility to the jury in order to provide an alibi for [Duranseau]. There's no doubt in my mind that she perjured herself, and I suspect all the other witnesses perjured themselves who came in to provide alibi testimony, but certainly as to [Cole], she did and, given the history of [Duranseau] in which he testifies for his relatives, they testify and provide alibis for him in trials ... it [doesn't take] a rocket scientist to figure out that they're working with each other and in basically a conspiracy of procuring perjured testimony ... and I don't believe that there has to be an eyewitness who can come in and say he or she saw [Duranseau] tell [Cole] that [Cole] should come in and testify and provide a false alibi.
>
> [G]iven the history of [Duranseau] and his family in the way that they provide testimony

for each other, I believe supports that conclusion. It might be a little different situation if there weren't the history of providing testimony for each other, but in this case I think ... that finding clearly is warranted.

Sentencing Tr. at 117–19.

3. Duranseau states that "[t]here was no evidence during trial, or at sentencing, that showed any communication between [Duranseau] and any of the witnesses who testified at trial." Appellant's Br. at 12. This statement is false: Schmitzer testified on cross-examination that he had received a letter from Duranseau "asking [Schmitzer] if [he] had any records of where [Schmitzer] was at or anything that would jog [Schmitzer's] memory as to where [Duranseau] was at." Trial Tr. at 256. Although Schmitzer had earlier told FBI agents that he had last seen Duranseau in 1981, *id.* at 266, Schmitzer testified that he was with Duranseau in Florida on September 24 and 27 of 1988, *id.* at 251–53.

4. Cole testified that she remembered the date that she was with Duranseau because it was the day after she broke off an engagement with her alleged fiancé, Edward Tackebury. Tackebury's daughter told authorities that she had never heard of Cole and that her father suffered from progressive cancer of the mouth and had not dated anyone for years prior to his death.

lines when it granted the government's motion for upward departure by sentencing Duranseau to a ninety-eight-month sentence to run concurrently with his prior seventy-four-month sentence. Duranseau argues that the district court misapplied § 5G1.3 [5] and failed to give any indication that it was departing upward based on an analysis of 18 U.S.C. § 3553. [6]

At the time of sentencing, Duranseau was serving a seventy-four-month sentence for the Michigan offenses. Pursuant to § 5G1.3, the district court first determined that Duranseau had an offense level of seventeen and a criminal history category of VI for the Iowa offense. Thus, his applicable guideline range for the Iowa offense was between fifty-one and sixty-three months. The district court next determined that the hypothetical total sentence that Duranseau would have received had he been sentenced for both the Iowa and the Michigan offenses at the same time was between thirty-three and forty-one months. [7] *See* U.S.S.G. § 5G1.3, comment. (n. 3). Thus, the district court determined that in order for Duranseau to receive any extra prison time for the Iowa offense, it must depart upward. *See United States v. Gullickson*, 981 F.2d 344, 349 (8th Cir.1992); *cf. United States v. Muzingo*, 999 F.2d 361, 363 (8th Cir.) (upholding district court's imposition of a consecutive sentence in spite of hypothetical combined sentence that was shorter than current unexpired state sentence), *cert. denied,* —— U.S. ——, 114 S.Ct. 575, 126 L.Ed.2d 474 (1993). Thus, the dis-

trict court sentenced Duranseau to a ninety-eight-month concurrent sentence.

■ A district court may depart from the guidelines when it finds aggravating or mitigating circumstances that are not adequately taken into consideration by the guidelines, 18 U.S.C. § 3553(b), and it provides the specific reasons for the departure, *id.* § 3553(c). We review the reasonableness of an upward departure based on circumstances not adequately considered for an abuse of discretion. *United States v. Perkins*, 929 F.2d 436, 438 (8th Cir.1991); *see also United States v. Sweet*, 985 F.2d 443, 445–46 (8th Cir.1993).

The district court did not abuse its discretion when it departed upward to sentence Duranseau to a ninety-eight-month concurrent sentence. The district court departed upward because if it had imposed a concurrent sentence of sixty-three months, the top of Duranseau's applicable sentencing range, Duranseau would not have received any additional punishment for the Iowa offense. *See Gullickson,* 981 F.2d at 349; *see also Muzingo,* 999 F.2d at 363. The district court noted that (1) the criminal history category did not adequately reflect the likelihood that Duranseau would continue to commit crimes once released, and (2) the impact of the crime on the victim was not adequately taken into consideration in the guidelines. [8]

Each of these reasons supports the district court's upward departure. The district court determined that Duranseau was a career criminal who had obtained multiple aliases and had made his livelihood by stealing and

5. Section 5G1.3 governs the imposition of a sentence on a defendant subject to an undischarged term of imprisonment. U.S.S.G. § 5G1.3 (Nov. 1992); *see United States v. Gullickson,* 981 F.2d 344, 346–48 (8th Cir.1993) (outlining § 5G1.3 calculations).

6. Duranseau does not dispute the accuracy of the district court's § 5G1.3 sentencing calculations; rather, Duranseau argues that the district court should not have departed upward and that the district court gave insufficient reasons to justify that departure. We also note that the district court imposed a concurrent sentence, not a consecutive sentence. Therefore, to the extent that Duranseau argues that the district court improperly imposed a consecutive rather than a current sentence, that claim is without merit.

7. In this case more crimes result in less punishment. The reason for this counter-intuitive result is that by including the prior offenses in the hypothetical offense-level calculation, the sentencing court necessarily excluded those offenses from the hypothetical criminal-history-category calculation. As a result, Duranseau's hypothetical offense level was one level greater than his offense level for the Iowa offense, but his hypothetical criminal history category was three categories lower than his criminal history category for the Iowa offense. The increased offense level was swallowed up by a decreased criminal history category.

8. Although the district court did not explicitly cite 18 U.S.C. § 3553, its reasons for upward departure mirror the elements stated in 18 U.S.C. § 3553.

other forms of illegal activity. The district court determined that Duranseau had a propensity to continue to commit crimes, and that there was a very high likelihood that he would return to his prior criminal pattern when released from prison. *See United States v. Matha*, 915 F.2d 1220, 1222 (8th Cir.1990) (per curiam); *see also* U.S.S.G. § 4A1.3 (Nov. 1992). Further, the impact of the crime on the victim was also a sufficient reason to depart upward. The district court determined that Duranseau's Iowa offense caused Running a loss of between $40,000 and $60,000 and forced Running to shut down his forty-three-year-old jewelry business. *See Perkins*, 929 F.2d at 438 (holding that impact on victim's reputation not an improper factor for the district court to consider when departing upward). Thus, we hold that the district court did not abuse its discretion when it departed upward and imposed a ninety-eight-month concurrent sentence on Duranseau.

## III. CONCLUSION

For these reasons, we affirm the judgment of the district court.

MCMILLIAN, Circuit Judge, concurring in part and dissenting in part.

I concur in Parts II(A), (B), and (D) of the majority opinion, but dissent from Part II(C) regarding the district court's sentencing enhancement for subornation of perjury pursuant to Guideline § 3C1.1 (obstruction of justice). Whether Mary Lou Cole did in fact commit perjury is not seriously disputed. The critical question is whether Duranseau willfully obstructed or impeded justice by aiding, abetting, counseling, commanding, inducing, procuring, or otherwise *willfully causing* her to perjure herself. It was the government's burden to prove Duranseau's willful conduct, not Duranseau's burden to negate it. The government admittedly had no evidence of any communication between Duranseau and Cole concerning her decision to testify or the substance of her testimony. The district court relied on evidence that defendant had, in the past, testified for some of his relatives and relatives had, in the past, testified and provided alibis for him. Based

on that history, the district court concluded "they're working with each other and in basically a conspiracy of procuring perjured testimony for each other." Sentencing Tr. at 118. In my opinion, there simply was insufficient evidence for the district court to conclude that Duranseau suborned Mary Lou Cole's perjury in this case. Accordingly, I would reverse the two-level enhancement for obstruction of justice.