UNITED STATES of America, Appellee,

v.

Robert Daniel GASSLER, Appellant.

No. 90–5568.

United States Court of Appeals,
Eighth Circuit.

Submitted June 11, 1991.

Decided Sept. 9, 1991.

Paul Engh, Minneapolis, Minn., for appellant.

Frank J. Magill, Jr., Minneapolis, Minn., for appellee.

Before LAY, Chief Judge, RONEY,* Senior Circuit Judge, and WOLLMAN, Circuit Judge.

WOLLMAN, Circuit Judge.

Robert Daniel Gassler appeals his conviction and sentence for possession of a firearm by a previously convicted felon. We affirm.

I.

During the Easter weekend of 1990 and the following week, Robert Gassler and a friend stayed at the Tom and Beverly Munoz home, house-sitting and caring for Beverly Munoz's eighteen-year-old son, Rick Foster. During that time, Gassler had a sawed-off shotgun with him. After her return from vacation, Beverly Munoz turned the gun over to the police. Both the Munozes cooperated with the police in connecting the gun with Gassler, who was arrested and charged with a violation of 18 U.S.C. § 922(g). A jury found Gassler

---

* The Honorable Paul H. Roney, United States Senior Circuit Judge for the Eleventh Circuit, sitting by designation.

guilty, and the district court[1] sentenced him to sixty months in prison.

At trial, several persons testified to Gassler's possession of the shotgun. Rick Foster stated that during the time Gassler was at the house, Gassler carried the gun around with him in a case or stored it in the bathroom. Beverly Munoz testified that after her return, Gassler asked her to lock up the case that held the gun. Two days later, Gassler came to the house and said he wanted the gun, but then left it in the attic, where Mrs. Munoz had placed it. Dale Lassard, a friend of Gassler's, testified that he had seen Gassler saw off the barrel and stock of the gun and had seen Gassler in possession of the gun many times.[2]

Before trial, Gassler moved *in limine* to exclude any reference at trial to the death of Dale Yunck, a murder in which Gassler was a suspect. The court granted that motion, but some references to Yunck and a homicide were made during the trial. In response to a question from Gassler's attorney during cross-examination about why he had come forward to testify, Dale Lassard stated, "I later learned that Dale—," whereupon Gassler's attorney objected and withdrew the question. During his testimony as a defense witness, Tom Munoz made several references to either a homicide or to Dale Yunck. He mentioned Yunck as an associate of Gassler's. Munoz testified that he was not working with the police on Gassler's arrest, but had been picked up on a homicide; later he was allowed to testify that he was not a suspect in the homicide to which he had referred. He stated that someone had called him and asked whether he knew what had happened to Yunck. Munoz later testified that he believed that the shotgun had been used in a murder. Gassler's attorney was concerned about the prejudice these references might cause and interrupted the testimony each time such a reference was made. Additionally, Gassler told the court that he had overheard a juror say during Munoz's

testimony, "Oh, now we know." The court finally cautioned Munoz, out of the hearing of the jury, to avoid any mention of the murder.

## II.

■ Gassler first contends that he did not receive a fair trial because of the several references made during the trial to Dale Yunck and to a murder. The government counters that the references constitute harmless error. *See* Fed.R.Crim.P. 52(a). We agree.

Munoz, who referred to the matter several times and was admonished by the court, was Gassler's own witness testifying under direct examination. His references to Yunck were not explicit. Lassard was the government's witness, but made only one vague reference to Dale Yunck, and that during cross-examination. The court instructed the jury that it was to consider only whether Gassler possessed the gun, not any other acts in which he may have been involved.

The evidence of Gassler's possession of the weapon was overwhelming. Three eyewitnesses testified that they had seen Gassler in possession of the gun. Foster testified that he saw Gassler at the house with the weapon many times; Beverly Munoz testified to Gassler's possession of the gun; Lassard told of seeing Gassler saw off the barrel and stock of the gun and of seeing Gassler in possession of the gun. There were also tapes of conversations in which Gassler admitted that the shotgun was his.

In light of this evidence, it cannot be said that the jury was improperly swayed by the vague references to a homicide and to Yunck. *Cf. United States v. Ray*, 768 F.2d 991, 995 (8th Cir.1985) (not harmless to admit transcript, which was the only evidence of one element of crime charged). It could clearly find Gassler guilty based on the other testimony alone. *See United States v. Whalen*, 844 F.2d 529, 534–35 (8th Cir.1988) (harmless error to admit hearsay

---

**1.** The Honorable David S. Doty, United States District Judge for the District of Minnesota.

**2.** Although both the barrel and stock of the weapon had been shortened, the overall length of the gun was within legal limits.

statement since other evidence against defendant was strong).

## III.

■ Next, Gassler contends that the district court erred in departing upward from the Sentencing Guidelines. In reviewing sentences departing from the Guidelines, we apply the three-part test set forth in *United States v. Diaz–Villafane,* 874 F.2d 43, 49 (1st Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989); *see United States v. Thomas,* 914 F.2d 139 (8th Cir.1990) (upward departure to sixty months from range of eight to fourteen months reasonable); *United States v. Crumb,* 902 F.2d 1337 (8th Cir.1990) (recognizing *Diaz–Villafane* test); *United States v. Snover,* 900 F.2d 1207 (8th Cir.1990) (recognizing *Diaz–Villafane* test); *United States v. Lang,* 898 F.2d 1378 (8th Cir.1990) (recognizing sound reasoning of and adopting *Diaz–Villafane* test). Under that test, the reviewing court must consider 1) whether, as a question of law, the circumstances the district court relied on for departure are sufficiently unusual in kind or degree to warrant departure; 2) whether, as a question of fact, the circumstances justifying departure actually exist; and 3) whether the sentence is reasonable. *Crumb,* 902 F.2d at 1339.

We review part one of the test under a *de novo* standard. The commentary to section 4A1.1, which sets out the formula for determining the criminal history points, states that

> criminal history categories are based on the maximum term imposed in previous sentences rather than on other measures, such as whether the conviction was designated a felony or misdemeanor. In recognition of the imperfection of this measure however, § 4A1.3 permits information about the significance or similarity of past conduct underlying prior convictions to be used as a basis for imposing a sentence outside the applicable guideline range.

United States Sentencing Commission, *Guidelines Manual,* § 4A1.1 comment. (backg'd) (Nov. 1989). Here, the district court took into account that Gassler's previous convictions involved the use or possession of firearms, finding that this was not taken into account in Gassler's criminal history score. Gassler's criminal history score was fifteen, placing him in a criminal history category of VI. He received three points each for convictions for aggravated robbery, escape from custody, unlawful possession of a pistol, and aggravated robbery and attempted murder. In addition, he received two points by virtue of his being on parole at the time of the instant offense, and one point for having been last released from prison within one year of the commission of the instant offense.

We review part two of the test under a clearly erroneous standard. Here, Gassler's convictions are clearly set out in the record, and no error exists. As the district court stated, "this defendant has demonstrated a willingness to use firearms in the commission of crimes in the past...." Transcript of Sentencing at 21, *United States v. Gassler,* Cr. No. 4–90–79 (D.Minn. Nov. 14, 1990). This statement is more than adequately supported by the record.

■ We review part three of the test to determine whether or not the sentence is reasonable. The district court raised Gassler's sentence from the range of thirty to thirty seven months to sixty months. This is well within the maximum term of ten years. 18 U.S.C. § 924(a)(2) (Supp.1991). Gassler was not just in possession of a gun. He had a shotgun sawed off both at the barrel and the stock. He had taped the remaining stock so that it would not take fingerprints. The friend with whom he house-sat also had a gun; the two of them seemed more likely present to guard the house than to care for the adult, competent son of the owners. Given the circumstances of this possession and Gassler's violent history, the sixty-month sentence is eminently reasonable. *See, e.g., United States v. Thomas, supra; United States v. Carey,* 898 F.2d 642 (8th Cir.1990).

## CONCLUSION

Gassler's conviction and his sentence are affirmed. We express our appreciation to

appointed counsel for his customary zealous, thorough presentation, both in his brief and during oral argument.