VAN SICKLE, Senior District Judge.
 

 A jury convicted Claymore of sexual abuse of a minor in violation of 18 U.S.C. §§ 1153 and 2243(a). At the time of the incidents Claymore was thirty-six years old and employed by the Oglala Sioux Tribe Public Safety Commission as a tribal police officer on the Pine Ridge Indian Reservation in South Dakota. The victim was a thirteen year old girl. She became pregnant and gave birth to a child. The government’s genetics expert testified that Claymore was the father of the child. The six rapes occurred in the back seat of a patrol car while Claymore was on duty, and apparently after he had picked up the victim for curfew violations.
 

 At the trial Claymore took the stand and denied that he had sexual contact with the victim. A fellow officer and the victim testified otherwise. Furthermore, the genetic evidence indicated that Claymore was the father of the victim’s child. Under the sentencing guidelines, sexual abuse of a minor is a Base Level Offense of 15. U.S.S.G. § 2A3.2. The district court
 
 [1]
 
 added two points for abuse of a position of trust, and two points for obstruction of justice.
 
 See
 
 U.S.S.G. §§ 3B1.3 & 3C1.1. The court then found Claymore’s Criminal History Category to be at Category II.
 

 With a Category II Criminal History and an Offense Level of 19, the guidelines call for a sentence of thirty-three to forty-one months. The court then held that, since Claymore’s conduct was pervasive and involved force, he was going to depart further upward, and he sentenced Claymore to
 
 *423
 
 sixty months imprisonment and supervised release of three years.
 
 [2]
 

 Claymore appeals, contending that both enhancements were incorrect, that the finding of a Criminal History Category of II is incorrect, and that the court erred in departing upward because of the use of force and appellant’s pervasive conduct. The standard of review varies. The fact determinations will only be overturned if the determinations are clearly erroneous.
 
 See United States v. Justice,
 
 877 F.2d 664, 670 (8th Cir.),
 
 cert. denied,
 
 493 U.S. 958, 110 S.Ct. 375, 107 L.Ed.2d 360 (1989). However, the trial court’s applications of the guidelines to the facts will be reviewed de novo.
 
 See United States v. Lange,
 
 918 F.2d 707, 710 n. 2 (8th Cir.1990).
 

 ABUSE OF A POSITION OF TRUST
 

 First, Claymore claims that it was error to add two points to the offense level for abuse of a position of trust pursuant to U.S.S.G. § 3B1.3. Conduct constituting an abuse of trust, as used in § 3B1.3, is akin to the offense of official oppression, which consists, in general, of inflicting upon any person, from an improper motive, bodily harm or any injury by a public officer while exercising or under color of exercising his office.
 
 See generally
 
 B. Finberg, Annotation,
 
 What Constitutes Offense of Official Oppression,
 
 83 A.L.R.2d 1007-17 (1962).
 
 See also, Virgin Islands v. Derricks,
 
 810 F.2d 50 (3d Cir.1987) (abuse of a position of trust by a police officer forcing a woman to engage in sexual activities or be subject to a fine, arrest, imprisonment, and be unable to work);
 
 Commonwealth v. Stumpo,
 
 306 Pa.Super. 447, 452 A.2d 809 (1982) (abuse of a position of trust by a police officer in uniform but off-duty who pulled at the clothing of a cocktail waitress).
 

 Claymore contends that, because the public opinion of the police is so poor, no one trusts the police and, thus, they cannot abuse their position. It is not, however, the community attitude which counts, but the nature of Claymore’s position. U.S.S.G. § 3B1.3 provides, in part, that “If the defendant abused a position of public or private trust ... in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels.” U.S.S.G. § 3B1.3. If an abuse of trust is so central to the crime that the abuse would be included in the base offense level, the increase under § 3B1.3 is not available.
 
 Lange,
 
 918 F.2d at 708-09 (embezzlement by a postal worker who worked with specialized mail). However, if the defendant’s position is one of a specialized nature not merely giving him access to commit the crime, then the two level increase should be added.
 
 Id.
 
 at 709.
 

 Claymore was not one who would ordinarily be put in a position to care for children. He was a police officer. He used this position to detain the victim, and then he abused his position by raping the victim in the patrol car. By using his position as a police officer to rape the victim and using the patrol car to facilitate the crime, Claymore abused a position of trust. This position of trust involved more than simple access to the victim. Therefore, the increase of two levels was proper.
 

 OBSTRUCTION OF JUSTICE
 

 Next, Claymore claims error in the two level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1. The transcript of the sentencing indicates this enhancement was made because the court determined that Claymore had committed perjury at trial. The notes to U.S.S.G. § 3C1.1 indicate that this enhancement is proper if the defendant commits perjury. U.S.S.G. § 3C1.1 n. 3(b).
 

 The court observed that the only person in the courtroom who might not have been certain Claymore was lying was Claymore himself.
 
 [3]
 
 Claymore contends that to adjust
 
 *424
 
 upward for his testimony at trial has the effect of punishing him for testifying, in violation of his constitutional rights. It also allows the court to become the fact finder, an issue reserved for the jury. However, this court has previously addressed this issue. In
 
 United States v. Willis,
 
 940 F.2d 1136 (8th Cir.1991), this court held that if the district court finds that the defendant committed perjury and not merely that the jury did not believe him, a two-level enhancement is appropriate.
 
 Willis,
 
 940 F.2d at 1140. A criminal defendant has the option of testifying, but not of committing perjury with impunity.
 

 We review the district court’s action here under the clearly erroneous standard.
 
 United States v. Seabolt,
 
 958 F.2d 231, 233-34 (8th Cir.1992). Because the victim and a fellow officer testified that Claymore had raped the victim, and because the genetic evidence indicated that Claymore was the father of the victim’s child, the record contained ample evidence to support the explicit finding of the district court that Claymore had committed perjury. Hence, the two point increase in the offense level is allowable.
 

 CRIMINAL HISTORY CATEGORY
 

 Upon reviewing Claymore’s criminal history, the court found that Claymore had ten previous convictions in tribal court. The court then increased Claymore’s Criminal History Category to Category II. This finding must stand unless we find it to be clearly erroneous.
 
 Justice,
 
 877 F.2d at 670. Given the finding of the ten convictions, we hold that it was not clearly erroneous to increase Claymore’s Criminal History Category to Category II.
 

 UPWARD DEPARTURE
 

 The district court decided to depart upward under Guideline § 5K2.0, which provides that the court may depart from the guidelines range if the court finds “that there exists an aggravating ... circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines____” U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)).
 

 When reviewing a sentence which departs from the guidelines, a court must consider the following. First, whether the purpose for the departure is “sufficiently unusual in kind or degree to warrant [a] departure” from the guidelines.
 
 United States v. Lloyd,
 
 958 F.2d 804, 805 (8th Cir.1992) (quoting
 
 United States v. Gassier,
 
 943 F.2d 909, 911 (8th Cir.1991)). The court will review the departure de novo.
 
 Lloyd,
 
 958 F.2d at 805. Second, the court must determine “whether, as a question of fact, the circumstances justifying departure actually exist____”
 
 Id.
 
 (quoting
 
 Gassier,
 
 943 F.2d at 911). This determination will be reviewed, as a finding of fact, under a clearly erroneous standard.
 
 Lloyd,
 
 958 F.2d at 806. Finally, the court must determine “whether the sentence is reasonable.”
 
 Id.
 
 at 805 (quoting
 
 Gassier,
 
 943 F.2d at 911).
 

 The district court relied upon the pervasiveness of Claymore’s conduct and his use of force. The court noted that the defendant raped the victim several times during the months of July through September of 1989 and that the “offenses took place at various places and under various circumstances, none the least of which was both in the front seat and back seat of the police vehicle.” Transcript of sentencing, at 9. The district court further stated that it “believes ... the fact that force was used occurred on several occasions, five or six times.”
 
 Id.
 
 at 10. The court concluded, “This was more than a single act of sexual abuse as charged in the indictment
 
 *425
 
 and accordingly, the Court believes that a departure upward from the grounds stated is warranted.”
 
 Id.
 
 We agree with the district court’s reasoning in determining that Claymore’s conduct was sufficiently unusual in kind and especially in degree to warrant an upward departure.
 

 We also find that the district court was not clearly erroneous in finding that the circumstances justifying departure actually exist. Its finding is supported by the testimony of a fellow police officer and the testimony of the victim. Also, the court had scientific evidence that revealed that Claymore was the father of the victim’s child.
 

 The sixty month sentence is reasonable in light of the facts of the case.
 

 Accordingly, the sentence appealed from is affirmed.
 

 [1]
 

 . The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.
 

 [2]
 

 . The prosecution did not know that force was involved at the time that Claymore was charged. Had they known, they could have charged him with aggravated sexual assault and his sentence could have been more severe.
 
 See United States
 
 v.
 
 Balfany, 965
 
 F.2d 575 (8th Cir.1992) (168 months for four counts of aggravated sexual assault of an eight-year-old child).
 

 [3]
 

 . At the sentencing hearing, the court explained:
 

 
 *424
 
 Now, of course, a criminal defendant has another right: the criminal defendant has a right to testify on his or her own behalf and when that choice is made, that criminal defendant is responsible to tell the truth. I have seen many cases where the criminal defendant did not take the stand because to take the stand they would have to not tell the truth. If this defendant in taking the stand would have told the truth, he would have probably then been convicted out of his own mouth. He chose to not tell the truth.
 
 If he believed what he was saying, he was the only one in the courtroom who believed what he was saying except, perhaps, his counsel.
 

 (Transcript of Sentencing, 5-6) (emphasis added).