UNITED STATES of America, Appellee,

v.

Kent J. BRUMMELS, Appellant.

No. 93–2158.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 12, 1993.

Decided Feb. 4, 1994.

Counsel who presented argument on behalf of the appellant was David A. Domina of Omaha, NE.

Counsel who presented argument on behalf of the appellee was Willis A. Buell, Asst. U.S. Atty., of Sioux City, IA.

Before FAGG, Circuit Judge, ROSS, Senior Circuit Judge, and MAGILL, Circuit Judge.

MAGILL, Circuit Judge.

Kent Brummels pleaded guilty to violating 21 U.S.C. § 610(a) (1988), which prohibits the adulteration of meat capable for use as human food. Brummels appeals the district court's[1] determination that the conduct to which he pleaded guilty qualified as a felony under 21 U.S.C. § 676(a) (1988). Because we hold that the district court's factual determination that Brummels had substantive quality-control duties in his role as quality control supervisor is not clearly erroneous and because we interpret "distribution" to include acts of meat adulteration by a supervisor in charge of quality control, we affirm the judgment of the district court.

## I. BACKGROUND

Kent Brummels pleaded guilty to acts that the parties agree amount to adulteration of meat in violation of 21 U.S.C. § 610(a).[2] Specifically, Brummels admitted that, while he was the quality control supervisor in the Siouxland Quality Meat plant (Siouxland), he took meat out of barrels marked "inedible" and put it into "edible" product containers or onto the conveyor belt for further processing.[3] Brummels also admitted that he "scooped up and picked up" meat from the plant floor and put it onto the conveyor belt or into containers marked "edible."

The plea agreement left to the district court's determination whether the acts committed by Brummels involved any "distribution or attempted distribution" of an adulterated article under 21 U.S.C. § 676(a). If Brummels' acts involved any "distribution or attempted distribution" of an adulterated article, then he would be guilty of a felony; if not, Brummels would be guilty of a misdemeanor.[4] The district court elicited evidence regarding Brummels' responsibilities as quality control supervisor at both the plea hearing (Plea Hearing) and at a special hearing (Motion Hearing) to determine whether Brummels' conduct constituted a felony.

At the Motion Hearing, the district court resolved a factual dispute regarding the contours of Brummels' responsibilities as quality control supervisor at Siouxland. Brummels claimed that he was a glorified meat-cutter who received extra pay, but had no substantive duties with respect to the quality of the meat that left the plant. Brummels claimed

---

1. The Honorable Donald E. O'Brien, Senior United States District Judge for the Northern District of Iowa.

2. "No person ... shall, with respect to any ... meat or meat food products ... (a) ... prepare any such articles which are capable of use as human food at any establishment preparing any such articles for commerce, except in compliance with the requirements of this chapter...." 21 U.S.C. § 610.

3. At the plea hearing, the government stated that if this case were to proceed to trial that the government would present evidence that the "inedible" barrels from which Brummels retrieved the meat frequently contained wood, staples, tobacco juice, or any other type of garbage. Plea Tr. at 17.

4. The only issue in this case is whether Brummels is a felon or a misdemeanant. This distinction does not affect the sentence received by Brummels, but may prevent Brummels from holding a management position in a meat processing plant in the future. See 21 U.S.C. § 671 (1988).

that his title was, just that, a title and nothing more. The government argued that Brummels did have quality control responsibilities and that he occupied and abused a position of public trust. The district court resolved this factual dispute in the government's favor.[5] In light of Brummels' position as quality control supervisor and the trust relationship between Brummels and the consuming public, the district court interpreted "distribution or attempted distribution" of adulterated meat under 21 U.S.C. § 676(a) to encompass Brummels' acts and concluded that Brummels was guilty of a felony. Brummels timely appealed.

## II. DISCUSSION

On appeal, Brummels contends that the acts to which he pleaded guilty constitute the misdemeanor of "preparation" of adulterated meat and not the felony of "distribution or attempted distribution" of adulterated meat. Brummels disputes the district court's factual determination regarding his responsibilities at Siouxland and also argues that the term "distribution" in § 676(a) is ambiguous and therefore should be interpreted, consistent with the rule of lenity, in his favor.

## A. Standard of Review

█ Brummels argues that the standard of review in this case is de novo; the government argues that the standard of review is clearly erroneous. Both parties are correct, in part. As to factual findings, the proper standard of review is clearly erroneous. *United States v. Claymore,* 978 F.2d 421, 423 (8th Cir.1992). As to application of facts to the legal interpretation of § 676(a), the standard of review is de novo. *See United States v. Schenk,* 983 F.2d 876, 879 (8th Cir.1993); *Claymore,* 978 F.2d at 423.

## B. Factual Findings

The only factual dispute involves the extent of Brummels' responsibilities as quality control supervisor at Siouxland. The district court adopted the factual findings of the presentence investigation report (PSI).[6] The PSI stated that Brummels supervised the quality control personnel and that the objective of quality control was to insure the quality of the meat at Siouxland. The PSI stated Brummels occupied a managerial position at Siouxland. Finally, the PSI stated that the victims of Brummels' acts included consumers of the adulterated meat.

Brummels' testimony at the Motion Hearing supports the district court's factual findings. Brummels testified that his job responsibilities included supervision and what amounts to training of the quality control personnel.[7] Finally, Brummels testified that one of his specific responsibilities was to insure that the meat met the specifications required for the customers.[8] In light of

---

**5.** The district court adopted the factual findings and recommendations of the presentence investigation report and applied a two-level enhancement to Brummels' offense level for an abuse of a position of public trust. Brummels did not appeal the district court's two-level enhancement.

**6.** In addition, at the Motion Hearing, the district court stated:

I'm going to find that the defendant is under the felony section; that distribution as contemplated by this section 676 would include a person with a title of quality control who was doing exactly what he shouldn't be doing as the head of quality control.

Motion Tr. at 49. Later, the district court added: I was going to say ... why I felt it probably should be a felony, and that is that this was a bad situation, and the defendant's wife recognized in two days that it was a bad situation and said she was happy to get out of there because she could see the things that they were doing wrong. This defendant was there for a long time, and may have come to the same conclusions, and maybe couldn't do it because he needed a paycheck, but the facts are that he was still there, and things were still happening. *Id.* at 69–70.

**7.** Brummels testified:

Each of [the quality control personnel] inspected the product before it went into packaging. My job as quality control supervisor was to fill out their pay sheets, talk to them, tell them what to look for. If we were trying to get a select type of, for instance, a rib eye with more marbling, I would say, you know, mark this piece of meat so it goes into the proper box for a certain customer.

Motion Tr. at 43.

**8.** "[QUESTION]: Part of your job was to be sure that the meat was up to the specifications required for the customers, weren't you [sic]? [Brummels]: At certain times, yes." Motion Tr. at 43.

these admissions by Brummels, we cannot say that the district court's factual findings are clearly erroneous. *See Claymore,* 978 F.2d at 423.

## C. "Distribution" under § 676(a)

Section 676(a) of Title 21 governs the penalties for violations of the meat inspection statutes. Brummels argues that the fact that his acts involved the "preparation and processing of meat clearly place[ ] him in the production, rather than the distribution phase of meat production." Appellant's Br. at 11. Brummels also argues that § 676(a) is ambiguous, and therefore, consistent with the rule of lenity, this court should interpret it narrowly to exclude his conduct. *See United States v. Freisinger,* 937 F.2d 383, 391 (8th Cir.1991).

### 1. Language and Structure of § 676(a)

As with any case involving statutory construction, we first look to the language of the statute. The language of § 676(a) defeats Brummels' first argument that he was not involved in "distribution" of adulterated meat simply because his acts constitute "preparation" of adulterated meat.[9] Section 676(a) provides that

> [a]ny person ... who violates any provision of this chapter for which no other criminal penalty is provided by this chapter shall upon conviction be subject to imprisonment for not more that one year, or a fine of not more than $1,000, or both such imprisonment and fine; but *if such violation involves* intent to defraud, or *any distribution or attempted distribution of an article that is adulterated* ... such person ... shall be subject to imprisonment for not more than three years or a fine of not more than $10,000, or both.

21 U.S.C. § 676(a) (emphasis added). Section 676(a) sets the default penalty for violations of the meat inspection provisions at the misdemeanor level and provides an additional condition that, if satisfied, transforms a misdemeanor into a felony. In order for a violation to constitute a felony under § 676(a), an act must (1) violate a separate meat inspec-

tion provision, and (2) "such violation" must "involve[ ] intent to defraud, or any distribution or attempted distribution of an article that is adulterated." *Id.* Thus, the language of § 676(a) requires an enhanced penalty for an act that squarely violates another provision within the meat inspection chapter, *and* involves "distribution or attempted distribution" of adulterated meat. *See id.*

■ Implicit in Brummels' argument, however, is the proposition that acts constituting "preparation" of adulterated meat cannot also, simultaneously, involve any "distribution" of adulterated meat. But the language of the statute compels the conclusion that an act that constitutes "preparation" can constitute a felony if it also involves "distribution or attempted distribution" of adulterated meat. *See* 21 U.S.C. § 676(a). We hold, therefore, that the language and structure of § 676(a) support a conclusion that acts of "preparation" can, in some instances, also constitute "distribution." Thus, we reject Brummels' argument that because his acts squarely constitute "preparation" of adulterated meat, they cannot also involve "distribution" of adulterated meat. We now turn to whether Brummels' acts involve "distribution" under § 676(a).

### 2. Scope of § 676(a)

Brummels next argues that the rule of lenity requires that this court define the ambiguous term "distribution" in § 676(a) narrowly to constitute " 'the process of getting goods *from* the manufacturer *to* the consumer, including marketing, handling of orders, and transport of goods.' " Appellant's Br. at 8 (quoting *The American Heritage Illustrated Encyclopedic Dictionary* 493 (1987) ` (emphasis added by appellant)). Brummels supports his definition with case law interpreting § 676(a), the legislative history of § 676(a), and case law interpreting the term "distribute" in statutes outside meat inspection context. Applying his definition, Brummels concludes that his conduct did not involve "distribution" under § 676(a). We disagree.

---

**9.** Section 601(*l*) defines "prepared" as "slaughtered, canned, salted, rendered, boned, cut up, or otherwise manufactured or processed." 21 U.S.C. § 601(*l*) (1988).

The rule of lenity requires that a court adopt the less punitive alternative if faced with two *reasonable* interpretations of a criminal statute and ambiguous congressional intent. *Freisinger*, 937 F.2d at 391. The rule of lenity serves as a rule of statutory construction for criminal statutes that applies only in "those situations in which a reasonable doubt persists about a statute's intended scope even *after* resort to 'the language and structure, legislative history, and motivating policies' of the statute." *Moskal v. United States*, 498 U.S. 103, 108, 111 S.Ct. 461, 465, 112 L.Ed.2d 449 (1990) (quoting *Bifulco v. United States*, 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980)). "The mere possibility of articulating a narrower construction, however, does not by itself make the rule of lenity applicable." *Smith v. United States*, —— U.S. ——, ——, 113 S.Ct. 2050, 2059, 124 L.Ed.2d 138 (1993). Moreover, a court need not "determine the precise contours" of a statutory term if any reasonable construction of the term would encompass the conduct of the defendant. *See id.*

The meat inspection statutes do not define "distribution." " '[U]nless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.' " *Beef Nebraska, Inc. v. United States*, 807 F.2d 712, 716 (8th Cir.1986) (quoting *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979)). Brummels defines "distribution" to constitute "the process of getting goods *from* the manufacturer *to* the consumer, including marketing, handling of orders, and transport of goods." Appellant's Br. at 8. We agree that this definition comports with the ordinary, contemporary, common meaning of "distribution." *See Beef Nebraska, Inc.*, 807 F.2d at 716.

Applying this definition to Brummels' conduct, however, we conclude that Brummels was involved in the distribution of adulterated meat under § 676(a). This definition, which includes the "handling of orders," clearly applies to Brummels' conduct as quality control supervisor. At the Motion Hearing, Brummels testified that one of his responsibilities as quality control supervisor was to ensure that the meat met the specifications required for customers. Motion Tr. at 43. Specifically, Brummels stated that "I would 'say ... mark this piece of meat so it goes into the proper box for a certain customer." *Id.*[10] By his own admission, Brummels handled customer orders. *See id.* We conclude that Brummels' "handling of orders" transforms his preparation of adulterated meat into a felony because "handling of orders" involves the "distribution" of an adulterated article under § 676(a).

Brummels' remaining arguments regarding the rule of lenity do not persuade us to adopt a more narrow definition than that offered by Brummels himself. *See Smith*, —— U.S. at ——, 113 S.Ct. at 2059. First, *United States v. Agnew*, 931 F.2d 1397, 1406 n. 9 (10th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 237, 116 L.Ed.2d 193 (1991), sheds no light on our inquiry because the court in *Agnew* declined to address the scope of distribution.[11] Second, the sparse legislative history does not contradict the ordinary, contemporary, common meaning of "distribution." [12] Finally, Brummels' reliance on definitions of "distribute" from other statutes

---

**10.** Brummels also admitted that when U.S.D.A. meat inspectors were not in the Siouxland plant, Brummels supervised the individuals who were the last check on the meat's quality before it reached retailers and public consumers. Motion Tr. at 43. Thus, Brummels was the last line of defense between consumers and adulterated meat.

**11.** The defendant in *Agnew* admitted in a pretrial motion that his actions of selling and buying meat qualified as distribution. 931 F.2d at 1406 n. 9.

To the extent that Brummels draws on *Agnew* to raise a distinction between the culpability of a meat-cutter and a member of management, we find this distinction unavailing. Even if we adopted this labor-management distinction, Brummels would not benefit because we have held that the district court's finding that Brummels held a managerial position was not clearly erroneous.

**12.** The only legislative history involving § 676(a) states: "Section [676(a)] would change the penalty for most violations of the act to a misdemeanor from a felony to facilitate prosecution." S.Rep. No. 799, 90th Cong., 1st Sess. (1967), *reprinted in* 1967 U.S.C.C.A.N. 2188, 2207.

and case law interpreting those statutes is inapposite because Congress chose to forego a definition in this instance, and thus we adopt the ordinary, contemporary, common meaning of "distribution." *See Beef Nebraska, Inc.,* 807 F.2d at 716.

■ Although we agree with Brummels that some ambiguity remains regarding the precise contours of "distribution or attempted distribution" under § 676(a), we conclude that any reasonable interpretation of "distribution or attempted distribution" would encompass acts of meat adulteration by an individual whose responsibilities included training and supervision of quality control personnel and ensuring that the final product met customer specifications. Therefore, as to Brummels' conduct, the rule of lenity is inapplicable because any reasonable interpretation of "distribution" under § 676(a) would encompass his conduct. *See Smith,* — U.S. at —, 113 S.Ct. at 2059 (holding that court need not "determine precise contours" of statutory term where defendant's conduct "meets any reasonable construction of [that term]"); *cf. Freisinger,* 937 F.2d at 391 (holding that rule of lenity applicable where congressional intent is ambiguous and *one of two reasonable interpretations would result in a less punitive result* ).

### III. CONCLUSION

We conclude that Brummels' acts involved distribution or attempted distribution of adulterated meat, and therefore affirm the judgment of the district court.