**UNITED STATES of America**

v.

**Harry James SAUL, Ronny Snead.**

**Nos. LR–CR–95–134(1), LR–CR–95–97(2).**

United States District Court,
E.D. Arkansas.

March 21, 1996.

Timothy O. Dudley, Little Rock, AR, for Harry James Saul.

William C. Adair, Jr., U.S. Attorney's Office, E.D. Arkansas, Little Rock, AR, for U.S.

## MEMORANDUM AND ORDER

JONES, United States Magistrate Judge.

The defendants, Harry James Saul and Ronny Snead, have been charged by information with the violation of 7 U.S.C. § 136j(a)(2)(G) and 18 U.S.C. § 2. The parties filed stipulations of fact in this case rather than presenting evidence at trial. The stipulations follow in part:

Harry Saul Minnow Farm, Inc. is a corporation located in Prairie County, in the Eastern District of Arkansas. Defendant Harry James Saul is part owner and operator of the minnow farm, and defendant Ronny Snead is an employee of Harry Saul Minnow Farm, Inc. The alleged criminal acts of these defendants occurred on this property, each defendant acting in concert with the other to accomplish a common goal.

Both defendants had applied for and completed an approved private applicator training program conducted by the Arkansas Cooperative Extension Service, and had received a private applicator restricted use pesticide license issued by the Arkansas State Plant Board. Defendant Harry James Saul had received his initial training on January 30, 1990, by County Extension Agent Steve Kelly. Both defendants received a copy of the *Pesticide Applicator Study Guide* (Exhibit 16), and a slideshow with dialogue (Exhibits 17 and 18) as part of their training.

On August 31, 1992, defendant Harry James Saul purchased five gallons of Furadan 4F insecticide-nematicide, properly labeled (Exhibit 14) and label supplement (Exhibit 15), for the purpose of killing blackbirds and white egrets. Furadan 4F is a restricted use pesticide whose active ingredient is carbofuran.

Sometime immediately prior to April 8, 1993, defendants Harry James Saul and Ronny Snead caused on one or more occasion, Furadan to be mixed with a gallon of water in a five gallon bucket containing minnows. These minnows along with grain, corn chops, that had been treated with Furadan were spread on a levee on the minnow farm for the purpose of killing blackbirds and white egrets.

On or about April 8, 1993, Special Agent Kevin Wood of the United States Department of the Interior, Fish and Wildlife Service, with the assistance of Refuge Officers Darwin Huggins and Ron Parker, legally entered the lands of the minnow farm and discovered three piles of minnows (Exhibits 1, 1a and 2), a dead possum, (Exhibit 4), two or three dead raccoons, a dead great horned owl (Exhibits 5 and 5a), and lots of dead blackbirds on the shore of one of the minnow ponds (Exhibit 3) or close thereby. Samples from each of the minnow piles and from corn chops, together with the owl, were properly tagged and sent to the National Fish and Wildlife Forensics Laboratory in Ashland, Oregon for examination, analysis, and diagnosis. Analysis of the minnows, possum, and owl revealed they contained carbofuran. The diagnosis of the owl's death was secondary carbofuran poisoning (Exhibits 6, 6a and 7).

Both defendants have made statements admitting to treating corn chops and minnows for the purpose of providing poisoned bait for the killing of blackbirds and white egrets. They admit to placing the same upon levies [sic] of ponds on Harry Saul Minnow Farm, Inc. for this purpose.

The information charges that the defendants:

... did use and/or cause to be used a restricted use pesticide, Furadan 4F, an insecticide consisting of the chemical carbofuran, to be used as a poisoned bait to be placed on levees adjacent to minnow ponds to kill birds and mammals that prey upon minnows in the ponds, and to fish tanks to kill undesirable fish. The labeling on Furadan 4F containers advises of environmental hazards and warns: "It is a violation of a federal law to use this prod-

uct in a manner inconsistent with its labeling."

[The defendants] did use and/or cause to be used Furadan 4F insecticide, a registered, restricted use pesticide in a manner inconsistent with its labeling and for a purpose not prescribed by law ...

Defendants argue that their conduct was simply not inconsistent with the labeling of Furadan when "inconsistent" is given its common-sense meaning. Defendants also assert that to the ordinary person inconsistent with the label would mean conduct which the label specifically prohibits and no such proof of specifically prohibited conduct exists in this case.

The Government and the defendants quote extensively from the legislative history of the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA). The legislative history of this Act, however, is inconsistent and inconclusive. When the Act was amended in 1978, Congress attempted to deal with the problems of enforcement which were seen both as too inclusive and not inclusive enough. Those who enforced the Act apparently found it difficult to determine what activities were indeed inconsistent with product labeling.

Because of the 1978 amendment, 7 U.S.C. § 136(ee) now reads in part:

The term "to use any registered pesticide in a manner inconsistent with its labeling" means to use any registered pesticide in a manner not permitted by the labeling, except that the term shall not include (1) applying a pesticide at any dosage, concentration, or frequency less than that specified on the labeling unless the labeling specifically prohibits deviation from the specified dosage, concentration, or frequency, (2) applying a pesticide against any target pest not specified on the labeling if the application is to the crop, animal, or site specified on the labeling, unless the Administrator has required that the labeling specifically state that the pesticide may be used only for the pests specified on the labeling after the Administrator has determined that the use of the pesticide against other pests would cause an unreasonable adverse effect on the environment, (3) employing any method of application not prohibited by the labeling unless the labeling specifically states that the product may be applied only by the methods specified on the labeling, (4) mixing a pesticide or pesticides with a fertilizer when such mixture is not prohibited by the labeling (5) any use of a pesticide in conformance with section 5, 18 or 24 of this Act [7 U.S.C.S. §§ 136c, 136p, or 136v], or (6) any use of a pesticide in a manner that the Administrator determines to be consistent with the purposes of this Act [7 U.S.C.S. §§ 136 et seq.].

Defendants argue that "permit" means to "allow or let" and that there was nothing on the label that did not allow them to use the pesticide in the manner described in the stipulation. Defendants also argue that the Court must resolve any ambiguity in their favor and cite *United States v. Brummels,* 15 F.3d 769 (8th Cir.1994), for the proposition that if there is a reasonable doubt regarding an alternative interpretation of the statute the rule of lenity applies and the Court must adopt the interpretation most favorable to them. The Court in *Brummels,* however, also states at 773:

The mere possibility of articulating a narrower construction, however, does not by itself make the rule of lenity applicable. *Smith v. United States,* 508 U.S. 223, 238, 113 S.Ct. 2050, 2059, 124 L.Ed.2d 138 (1993). Moreover, a court need not "determine the precise contours" of a statutory term if any reasonable construction of the term would encompass the conduct of the defendant.

The statute lists specific exceptions to prohibited conduct, and the defendants do not argue that their conduct falls within any of the exceptions. After examining the Furadan 4F label and supplement (Defendants' Exhibits 14 and 15) the Court does not find a listed exception for defendants' conduct and defendants cannot reasonably argue that their conduct fits within the kind of exceptions described in the statute. Given those exceptions the Court believes that reasonably construed, the statute covered their conduct.

**1076**

The Court, therefore, finds beyond a reasonable doubt that the defendants' conduct was not permitted by the product's labeling and thus violated the statute's prohibitions.