# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

01-6031EM

_____

| | | |
|---|---|---|
| In re: Nathaniel Peterson; Karen Peterson | * | |
| | * | |
| | * | |
| Debtors | * | |
| | * | |
| Nathaniel Peterson; Karen Peterson | * | |
| | * | |
| Plaintiffs - Appellants | * | |
| | * | Appeal from the United States |
| v. | * | Bankruptcy Court for the |
| | * | Eastern District of Missouri |
| Michael Rothweiler | * | |
| | * | |
| Defendant - Appellee | * | |
| | * | |
| John V. LaBarge, Jr. | * | |
| | * | |
| Trustee - Amicus on Behalf of Appellee | * | |
| | * | |

_____

Submitted: November 30, 2001
Filed: December 21, 2001

_____

Before KOGER, Chief Judge, SCOTT and DREHER, Bankruptcy Judges.

_____

KOGER, Chief Judge.

The Chapter 13 debtors, Nathaniel and Karen Peterson, appeal from the bankruptcy court's[1] decision overruling their objection, made by way of adversary proceeding, to the proof of claim filed by Michael Rothweiler, the second home mortgagee. The Petersons had alleged that Rothweiler's secured claim should be disallowed because he had violated the Truth In Lending Act ("TILA") when making two loans to them, and that they had properly rescinded the transactions. The bankruptcy court determined that the Petersons failed to prove that Rothweiler was a creditor under TILA, and, accordingly, they could not rescind the loans or recover damages. The bankruptcy court also ruled that even if Rothweiler was a creditor under TILA, the Petersons were required to tender the loan proceeds to Rothweiler in order to effectuate the rescission, which they failed to do. On appeal, the Petersons assert that they presented sufficient evidence at trial which showed that Rothweiler was a creditor for purposes of the application of TILA remedies, and that because they are in bankruptcy, they should be able to rescind the transactions without tendering the loan proceeds to Rothweiler. The Petersons also contend that the bankruptcy court erred by failing to take judicial notice of four unrelated bankruptcy case files when requested by them during the course of the trial, and that the bankruptcy court erred in determining that Rothweiler had not violated Missouri law. The Petersons also assert on appeal that the confirmed Chapter 13 plan, which they contend treats Rothweiler as an unsecured creditor entitled to only a ten percent distribution under the plan, has res judicata effect regarding the treatment of Rothweiler's claim. The Chapter 13 Trustee, John V. LaBarge, Jr., filed an amicus brief in support of Rothweiler in which he adopts the position that the confirmed Chapter 13 plan does not have res judicata effect on the treatment of his claim.

---

[1] The Honorable Barry S. Schermer, United States Bankruptcy Judge for the Eastern District of Missouri.

## Factual Background

On June 14, 2000, Nathaniel and Karen Peterson filed a voluntary petition for rehabilitation under Chapter 13 of the Bankruptcy Code. Michael Rothweiler holds a second mortgage on the Petersons' home, and filed a proof of claim as a secured creditor. The Petersons' Chapter 13 plan was confirmed by the bankruptcy court on October 30, 2000. While Rothweiler filed a secured claim in the case, the plan does not expressly set forth the treatment of the debt owed to him. Rather, the Petersons treat Rothweiler as an unsecured creditor entitled to share in the approximate ten percent distribution to be made to unsecured creditors.

On September 22, 2000, the Petersons filed an adversary proceeding in which they objected to Rothweiler's proof of claim, asserting that Rothweiler, a creditor under the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"), violated TILA and the regulations promulgated thereunder, 12 C.F.R. § 226.1 et seq., commonly known as Regulation Z, and, as a consequence, has no secured interest in their residence. In their adversary complaint the Petersons alleged that on or about September 22, 1997, they signed a note promising to pay the sum of $10,179.33 to Rothweiler, and that this note was secured by a second deed of trust on their residence. The Petersons further alleged that this note was amended on May 17, 1999, when Rothweiler loaned them additional funds.

In Count I of their complaint, the Petersons listed several alleged violations of TILA by Rothweiler; contended that they had notified Rothweiler on May 30, 2000, and again on September 21, 2000, of their intent to rescind the transactions under TILA; and asserted that Rothweiler's secured claim should be disallowed because the security interest held by Rothweiler had been properly rescinded pursuant to section 1635 of TILA and Regulation Z. In addition to seeking enforcement of their rescission of the loan transactions, the Petersons sought an award of statutory damages, costs and attorney's fees based upon Rothweiler's failure to honor their

valid rescission notice in conformity with the requirements of TILA, and for other alleged violations of TILA.

In Count II of their complaint, the Petersons alleged that in the promissory note signed on May 17, 1999, Rothweiler charged them an origination fee on the indebtedness in excess of the five percent allowed pursuant to Mo. Rev. Stat. § 408.233.5; and charged them fees in excess of those provided in Mo. Rev. Stat. § 408.233.1 by charging them a recording fee of $135.00, a funding fee of $275.00 and a $3000.00 consultant fee. The Petersons also alleged that in both the September 22, 1997 promissory note and the May 17, 1999 promissory note Rothweiler charged them late fees far in excess of those permitted by Mo. Rev. Stat. § 408.233.4.

In Count III of their complaint, the Petersons alleged that Rothweiler engaged in a practice of "loan flipping" by encouraging them to take out a second loan when they were behind on their initial loan payments, which caused them to incur additional points, closing costs and fees. Finally, the Petersons alleged that the loan transactions constituted abusive lending practices and were unconscionable.

Following a trial on the Petersons' adversary complaint, the bankruptcy court overruled the Petersons' objection to Rothweiler's proof of claim on the grounds that they had failed to show that Rothweiler was a creditor for purposes of the application of TILA and, accordingly, the Petersons could not avail themselves of the TILA remedies; that even if TILA applied, they had failed to show that they could tender the loan proceeds in full to Rothweiler in order to rescind the loan transactions; and they had failed to prove violations of Missouri law. The Petersons filed a motion for new trial or for rehearing in which they contended that they were entitled to either a new trial or a rehearing on the basis that the evidence contained in four bankruptcy case files, of which the bankruptcy court refused to take judicial notice, coupled with the numerous deeds of trust presented at trial clearly showed that Rothweiler was a

creditor within the meaning of TILA. After the bankruptcy court denied their motion, the Petersons timely appealed.[2]

## Issues Raised on Appeal

1. Whether the bankruptcy court erred in determining that the Petersons failed to prove that Rothweiler was a creditor under the Truth in Lending Act, more specifically:

A. Whether the bankruptcy court correctly interpreted Regulation Z to require the Petersons to meet the numerical guidelines set forth in Regulation Z after Rothweiler admitted during trial that he regularly extended consumer credit;

B. Whether the Petersons met the numerical guidelines established in Regulation Z by means of the several deeds of trust produced at trial; and

C. Whether the numerical guidelines set forth in the Commentary (footnote three) to Regulation Z are demonstrably irrational.

2. Whether the bankruptcy court erred by ruling that even if TILA applied, because the Petersons were not able to tender the loan proceeds to Rothweiler upon rescission, they could not rescind the transactions.

3. Whether confirmation of the Petersons' Chapter 13 plan has res judicata effect regarding the treatment of Rothweiler's claim as an unsecured claim.

---

[2] The bankruptcy court's order entered on April 24, 2001, overruling the Petersons' objection to Rothweiler's proof of claim is a final appealable order. See Moss v. Burton & Norris (In re Moss), 267 B.R. 839, 842 (B.A.P. 8th Cir. 2001). On April 27, 2001, the Petersons timely filed a motion for new trial or for rehearing, which suspended the ten-day time period in which to file an appeal from the order overruling their objection to Rothweiler's proof of claim until May 15, 2001, when the bankruptcy court ruled on that motion. See Fed. R. Bankr. P. 8002(b)(2); 9023. The Petersons filed their notice of appeal on May 18, 2001.

4. Whether the bankruptcy court erred in finding that Rothweiler had not violated Missouri law.

5. Whether the bankruptcy court erred by not taking judicial notice of four unrelated bankruptcy case files at trial when requested to do so by the Petersons.

## Standard of Review

"An appellate court reviews the bankruptcy court's findings of fact, whether based upon oral or documentary evidence, for clear error, and reviews legal conclusions de novo." Nelson v. Mickelson (In re Pfleghaar), 215 B.R. 394, 395 (B.A.P. 8th Cir. 1997)(citing Fed. R. Bankr. P. 8013; First Nat'l Bank of Olathe v. Pontow, 111 F.3d 604, 609 (8th Cir. 1997)). A bankruptcy court's interpretation and application of a statute is reviewed under a de novo standard. See White v. Coors Distrib. Co. (In re White), 260 B.R. 870, 874 (B.A.P. 8th Cir. 2001)(citing United States v. Brummels, 15 F.3d 769, 771 (8th Cir. 1994); Wegner v. Grunewaldt, 821 F.2d 1317, 1320 (8th Cir. 1987)).

## Discussion

1. Whether the bankruptcy court erred in determining that the Petersons failed to prove that Rothweiler was a creditor under the Truth in Lending Act.

Rothweiler does not challenge the bankruptcy court's finding that he violated the provisions of TILA in his dealings with the Petersons. The only question is whether Rothweiler qualified as a "creditor" for purposes of the application of TILA

6

and TILA remedies.  The term "creditor" is defined in the Truth In Lending Act, in relevant part, as a person[3] who both:

> (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement. . . .

15 U.S.C. § 1602(f) (1998).  Pursuant to Regulation Z, a person regularly extends consumer credit:

> [O]nly if it extended credit (other than credit subject to the requirements of § 226.32) more than 25 times (or more than 5 times for transactions secured by a dwelling) in the preceding calendar year.  If a person did not meet these numerical standards in the preceding calendar year, the numerical standards shall be applied to the current calendar year.  A person regularly extends consumer credit if, in any 12-month period, the person originates more than one credit extension that is subject to the requirements of § 226.32 or one or more such credit extensions through a mortgage broker.

12 C.F.R. § 226.2(a)(17), n.3 (2001).  Regulation Z further provides that "[f]ootnotes have the same legal effect as the text of the regulation."  12 C.F.R. § 226.2(b)(4) (2001).

Regulation Z defines a dwelling as:  "a residential structure that contains 1 to 4 units, whether or not that structure is attached to real property.  The term includes

---

[3] The term "person" means a "natural person or an organization."  15 U.S.C. § 1602(d) (1998).

an individual condominium unit, cooperative unit, mobile home, and trailer, if it is used as a residence." 12 C.F.R. § 226.2(a)(19) (2001).

On appeal, the Petersons contend they proved that Rothweiler was a creditor under TILA based upon his admission at trial that he regularly extended consumer credit. At trial the following exchange occurred during the examination by the Petersons' counsel of Rothweiler in the context of counsel trying to determine the number of loan transactions in which he had engaged in addition to the Petersons' loans:

> [MS. STERLING-SCOTT:] Mr. Rothweiler, would you please tell me in what states you have your company, your mortgage business?
> MR. LOVE: Objection your Honor, irrelevant.
> THE COURT: What's the relevance, ma'am?
> MS. STERLING-SCOTT: Your Honor, the relevance is, is that Truth in Lending requires that a creditor, is doing business on a regular basis. And we would like to know where he's doing it, how often he's doing it.
> THE COURT: Do you regularly as part of your business, lend money to consumers to refinance or finance their homes?
> [ROTHWEILER]: Yes.
> THE COURT: Do you want to follow up on that?
> MS. STERLING-SCOTT: We do. We would like to know again, what counties do you primarily record your Deeds of Trust in?
> MR. LOVE: Irrelevant; cumulative.
> THE COURT: What else does Truth in Lending require other than an admission that he regularly conducts this type of business of lending money to consumers to refinance their homes?
> MS. STERLING-SCOTT: Because we would like to look at the Deeds of Trust on those loans.

THE COURT: Oh, is that germane to this case?

MS. STERLING-SCOTT: That's all right, your Honor.

THE COURT: What was that, a fishing expedition?

MS. STERLING-SCOTT: No.

THE COURT: Well then tell me the relevance? I don't mean to intimidate you, if that's what I'm doing. Am I?

MS. STERLING-SCOTT: No, your Honor. May we just have Mr. Rothweiler identify those Deeds of Trust then?

THE COURT: Will you stipulate that they are true and accurate, sir?

MR. LOVE: I stipulate that they appear to be certified copies from the Recorder of Deed's Office.

THE COURT: You may ask him. Go ahead, ma'am.

. . . .

BY MS. STERLING-SCOTT:

Q   Mr. Rothweiler, how many Deeds of Trust did you file in 1996, do you recall?

A   I believe four.

Q   Pardon?

A   I believe four.

. . . .

THE COURT: Does the statute have different provisions if you file different quantities or engage in more or less business?

MS. STERLING-SCOTT: Yes, your Honor.

THE COURT: It does? What citation is that?

MS. STERLING-SCOTT: (No verbal response.)

THE COURT: So, if you file more than a certain number there is a certain provision, - - a different provision provides to Truth in Lending?

MS. STERLING-SCOTT: Yes, your Honor, that's correct.

THE COURT: Okay. What is that provision?

9

MS. STERLING-SCOTT: Under Truth in Lending, your Honor, the statute gives us guidelines as to who might be considered a creditor for purposes of Truth in Lending. And that is what we are trying to establish.

THE COURT: Where was this property located of the Petersons'?

MS. STERLING-SCOTT: St. Louis County.

THE COURT: Are there different remedies if you file? Are there different remedies under the statute if you file a certain number of these Deeds of Trust?

MS. STERLING-SCOTT: Yes, your Honor, that's correct.

THE COURT: What's the cut-off then?

MS. STERLING-SCOTT: Depending on the type of loan, under whether it is a high interest loan as defined in the statute, there's a minimum of one if it is under, - - considered a high interest under the statute then there is a minimum of six.

THE COURT: Six recordings?

MS. STERLING-SCOTT: Six transactions, not necessarily recordings.

THE COURT: Okay. Now, what do the recordings in the city have to do with anything, if this is county property?

MS. STERLING-SCOTT: Your Honor, if the statute sets a statutory minimum of when he could be considered a creditor. And what we need to see, we need to find out that information.

THE COURT: During what period of time?

MS. STERLING-SCOTT: We want to find out from 1996 through present.

Trial transcript, pages 55-61.

Regulation Z contains very explicit numerical requirements, and thus quantifies the term "regularly" as it is used in TILA. Therefore, even though Rothweiler

responded affirmatively when asked by the bankruptcy court whether as part of his business he regularly lent money to consumers to refinance or finance their homes, his answer can not be viewed in a vacuum, but must be considered in the entire context of the definition of "creditor" in section 1602(f) of TILA in conjunction with the numerical guidelines promulgated in section 226.2(a)(17), n.3 of Regulation Z. We determine that the bankruptcy court did not err by requiring the Petersons to show that Rothweiler met the numerical guidelines for "regularly" extending consumer credit as set forth in Regulation Z.

Next, the Petersons assert that they proved the requisite five consumer transactions secured by a dwelling occurred by means of the several deeds of trust introduced and admitted at trial.[4] Because the Petersons failed to provide us with the deeds of trust that the bankruptcy court admitted as evidence during the trial of this matter, we found it necessary to obtain those documents from the clerk of the bankruptcy court to assist us in our review. See Billings v. Chicago, Rock Island and Pacific R.R. Co., 570 F.2d 235, 238 (8th Cir. 1978)(citing Fed. R. App. P. 30(a))("Counsel should note that the original records are always available to this court and that both the court and the parties may rely on parts of the trial record not included in the appendix."); Eighth Circuit Bankruptcy Appellate Panel Local Rule 8001A(b)(4)("When Part VIII of the Federal Rules of Bankruptcy Procedure and these Rules are silent as to a particular matter of practice, the court may order application of the Federal Rules of Appellate Procedure. . . .").

In addition to the Peterson transaction that occurred in 1997, the deeds of trust admitted into evidence show that four transactions occurred in 1996, five transactions occurred in 1997, two transactions occurred in 1998, three transactions occurred in

---

[4] The remaining two grounds upon which Rothweiler could be a creditor for purposes of TILA are not implicated in this appeal.

11

1999, and one transaction occurred in 2000.[5] Based upon the deeds of trust admitted at trial, a total of six transactions occurred in 1997, the Peterson transaction and the five additional transactions reflected by the 1997 deeds of trust.[6] However, as the bankruptcy court correctly pointed out, the Petersons failed to show that the deeds of trust secured dwellings, as required and defined by Regulation Z. The Petersons simply failed in their burden of proof on this issue.

We disagree with the Petersons' assertion that it was clear from the face of the documents that the deeds of trust secured dwellings. None of the deeds of trust admitted at trial provide such clarity. We also reject the Petersons' alternative argument that we can infer that the deeds of trust secured dwellings based on Rothweiler's admission that he regularly as part of his business lent money to consumers to refinance or finance their homes. There was nothing in Rothweiler's testimony that connected this statement to the particular deeds of trust submitted by the Petersons at trial. In other words, the Petersons failed to ask Rothweiler whether, and otherwise failed to show that, the deeds of trust in question secured dwellings.

---

[5] Along with the Peterson deed of trust, the bankruptcy court admitted into evidence 17 deeds of trust. However, two copies of the Frederick deed of trust and two copies of the Stuckey deed of trust were admitted into evidence. Therefore, excluding the Peterson transaction, 15 transactions are at issue.

[6] Regulation Z provides that if a person does not meet the numerical standards in the preceding calendar year, the numerical standards are to be applied to the current calendar year. 12 C.F.R. § 226.2(a)(17), n.3 (2001). We interpret this language to mean the year in which the loan transaction in question occurred. In this case, Rothweiler first loaned money to the Petersons in 1997, therefore, we examine additional transactions that occurred in 1997. Rothweiler made the second loan to the Petersons in 1999, however, no deed of trust was admitted at trial relating to that transaction, and the evidence showed that only three other transactions occurred in 1999.

12

Finally, the Petersons challenge the numerical guidelines set forth in the Commentary (footnote three) to Regulation Z on the grounds that they are demonstrably irrational. However, this issue was never raised before the bankruptcy court. The trial transcript reflects that counsel for the Petersons attempted to show that Rothweiler had engaged in the requisite number of transactions and, therefore, was a creditor for purposes of TILA. Counsel has never questioned the validity or rationality of any portion of Regulation Z, including the Commentary, until this appeal. Accordingly, we decline to consider this issue because it is not properly before us. See Harmon v. United States, 101 F.3d 574, 586 (8th Cir. 1996).

In sum, we hold that the bankruptcy court did not err by determining that the Petersons had failed to prove that Rothweiler was a creditor for purposes of TILA, and, therefore, they could not rescind the loan transactions.

2. Whether the bankruptcy court erred by ruling that even if TILA applied, because the Petersons were not able to tender the loan proceeds to Rothweiler upon rescission, they could not rescind the transactions.

The Petersons assert that the bankruptcy court erred by ruling that even if TILA applied, because they could not show that they had the means to tender the loan proceeds to Rothweiler upon rescission, their attempt to rescind under TILA must fail. We find it unnecessary to address this issue in light of our determination that the bankruptcy court correctly ruled that the Petersons failed to prove that Rothweiler was a creditor within the meaning of TILA and, therefore, TILA and its remedies did not apply.

3. Whether confirmation of the Petersons' Chapter 13 plan has *res judicata* effect regarding the treatment of Rothweiler's claim as an unsecured claim.

The Petersons contend on appeal that the confirmed Chapter 13 plan should be given res judicata effect regarding the treatment of Rothweiler's claim, and, therefore, his claim should be treated as unsecured as provided for in the plan. There is nothing in the record on appeal to indicate that the Petersons ever raised this issue before the bankruptcy court. It appears that the Petersons have raised this issue for the first time on appeal. Accordingly, this issue is not properly before us, and we decline to address the merits of same. See Harmon, 101 F.3d at 586.

4. Whether the bankruptcy court erred in finding that Rothweiler had not violated Missouri law.

First, excluding the heading, the Petersons in their brief devote a total of five lines, consisting of four sentences, to this issue. There is no citation to statutory or case law, nor any meaningful citation to the record on appeal. We determine that this issue has been effectively abandoned on appeal based on the Petersons' failure to adequately brief same. In any event, we uphold the bankruptcy court's ruling on this issue. The Petersons failed to produce the September 22, 1997 promissory note at trial, and the deed of trust does not set out the fees charged by Rothweiler for that loan transaction. Further, there was no proof that the May 17, 1999 loan was secured by a deed of trust, which excludes that loan transaction from the application of section 408 of the Missouri Revised Statutes. See Mo. Rev. Stat. § 408.231 (2001).

5. Whether the bankruptcy court erred by not taking judicial notice of four unrelated bankruptcy case files at trial when requested to do so by the Petersons.

The Petersons assert that the bankruptcy court erred by failing to take judicial notice of four unrelated bankruptcy case files at trial after they requested the court to

do so.[7]  The Petersons argue that the case files contained information which would have helped prove that Rothweiler was a creditor under TILA.  A bankruptcy court's decision regarding the admission of evidence is reviewed for abuse of discretion. City of Sioux City, Iowa v. Midland Marina, Inc. (In re Midland Marina, Inc.), 259 B.R. 683, 687 (B.A.P. 8th Cir. 2001)(citing First Bank Investors' Trust v. Tarkio College, 129 F.3d 471, 476 (8th Cir. 1997)).

Rule 201 of the Federal Rules of Evidence, which is applicable to bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 9017, provides that it "governs only judicial notice of adjudicative facts," and that a "court shall take judicial notice if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(a) and (d).  In regards to this matter, the following exchange occurred at trial during the examination of Rothweiler:

> THE COURT: Thank you.  Anything further Ms. Sterling-Scott?
> MS. STERLING-SCOTT:  Yes, your Honor.  Your Honor, I had some files from the Court (sic) sent over here.
> THE COURT: Yes ma'am.
> MS. STERLING-SCOTT: And going through Mr. Rothweiler's documents that he produced, I did see some omissions from the ones that we have up there, and did find one, but there are two others that I don't see that evidently have recorded Deeds of Trust, that were produced, and I would just like to go through those files with Mr. Rothweiler.

---

[7] Although the Petersons assert that four bankruptcy case files are at issue, in their brief they only list three unrelated bankruptcy cases of which they asked the bankruptcy court to take judicial notice: Barbra Lloyd, Hubert and Goldie Hinton, and Kevin Hennessy.  The trial transcript provides absolutely no guidance regarding how many, or what, unrelated bankruptcy case files of which the Petersons requested the bankruptcy court to take judicial notice.

MR. LOVE:  Objection, your Honor.  Exceeding the scope of cross.

THE COURT: Sustained.

REDIRECT EXAMINATION

BY MS. STERLING-SCOTT:

Q    Let me ask you again, Mr. Rothweiler, during the interview with Mrs. Peterson, what information did you solicit as to their financial ability to repay their debts?

MR. LOVE: Objection, repetitive, also exceeds the scope of cross.

MS. STERLING-SCOTT: All right.  Your Honor, we're just going to move to admit our, - - all of the documents into evidence.

. . . .

THE COURT:  Okay. Does the Plaintiff rest?

MS. STERLING-SCOTT: Your Honor, I would like you to take judicial notice of those bankruptcy files, because those were not, - - again, those were Deeds of Trust that were not produced by Mr. Rothweiler, that he, in fact, has filed a Deed of Trust in those.

THE COURT: Okay. Decline.  I don't take notice of files.  If you want me to, - - well, initial notice is defined in the Rules of Evidence as universal truth.  Now, if you want me to, - - I don't know what it is you want, so I am denying your request. . . .

Trial Transcript at pages 74-78.

Here, the trial transcript shows that the Petersons asked the bankruptcy court to take judicial notice of the entire contents of the bankruptcy case files instead of directing the court's attention to specific documents in those files that contained adjudicative facts relevant to the issues being tried in the adversary proceeding.  The burden was upon the Petersons to present pertinent evidence to the bankruptcy court in support of their contentions.  The bankruptcy court was not required to wade through the bankruptcy case files in search of same.  We determine that the

16

bankruptcy court did not abuse its discretion in refusing to take judicial notice of the four unrelated bankruptcy case files under these circumstances.  See In re Tyrone F. Conner Corp., Inc., 140 B.R. 771, 781-82 (Bankr. E.D. Cal. 1992).

Further, it is impossible to engage in any meaningful appellate review of this issue because the Petersons failed to identify the four unrelated bankruptcy case files in any manner during trial and failed to identify any pertinent documents from those files in an effort to preserve the record for appeal.  In conjunction with failing to identify the four bankruptcy case files in the first instance, the Petersons also failed to make a proffer of evidence for the record when the bankruptcy court denied their request for judicial notice.

## Conclusion

We affirm the decision of the bankruptcy court overruling the objection made by Nathaniel and Karen Peterson to the proof of claim filed by Michael Rothweiler.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL,
EIGHTH CIRCUIT